THE STATE EX REL. THE TOWN OF ROCHESTER, Respondent, vs. THE BOARD OF SUPERVISORS OF RACINE COUNTY, Appellant.

*January 12 — January 31, 1888.*

*(1) Town meetings: Hours of opening and closing. (2, 3) Bridges: Division of cost between town and county: Power to rebuild or repair without vote of electors: Navigable streams. (4) Construction of statute re-enacted in revision.*

1. Sec. 796, R. S., relating to the hours of opening and closing the polls of the election at a town meeting, does not apply to adjourned or special meetings held for merely deliberative purposes and for the transaction of business not requiring a vote by ballot.

State ex rel. Town of Rochester vs. Board of Sup'rs of Racine County.

[2. How far the allegations of a petition presented by a town board under ch. 187, Laws of 1885, are conclusive upon the county board, not determined.]

3. Ch. 229, Laws of 1874 (re-enacted, as amended by sec. 2, ch. 252, Laws of 1877, in secs. 1320, 1321, R. S.),— providing that a county, town, city, or village may levy a tax or issue bonds, not exceeding certain amounts, for the purpose of building or maintaining, or aiding in building or maintaining, a bridge across a navigable or meandered stream, but that no such tax shall be levied or bonds issued unless authorized by a vote of the electors,— was intended to confer a power not previously possessed, and does not restrict the county, town, city, or village from rebuilding or repairing, without a vote of the electors, any bridge which it had legal authority to rebuild or repair previous to the enactment of that chapter. And where a town, by petition under ch. 187, Laws of 1885, prays that the county board will appropriate one half the cost of rebuilding a bridge over a navigable river, which said town had authority, before the passage of the act of 1874, to build, maintain and repair, the county board may make the appropriation and levy the tax required, without submitting the question to a vote of the electors.

4. The same construction must be given to a law re-enacted in the Revised Statutes as would have been given to it while it was a separate and independent act.

APPEAL from the Circuit Court for *Racine* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This is a proceeding by *mandamus* to compel the county board of Racine county to appropriate money in aid of the construction of a bridge across Fox river in the town of *Rochester*. At the annual meeting of the board of supervisors of Racine county in 1886, the town board of supervisors of the town of *Rochester* presented a petition setting up the following facts: (1) That the electors of said town at its annual town meeting in 1886 voted to construct a bridge across Fox river, at a point where the old United States road crossed said river, defining the place particularly, and that the plans and specifications for a bridge suitable for that purpose were adopted at a special town meeting held

November 20, 1886. (2) It sets out the general plans and specifications for the bridge, and alleges that the cost of the bridge would be $4,600, as near as can be determined. (3) That the town of *Rochester* has provided for the payment of one half of the cost of said bridge, viz., the sum of $2,300, and that the ·further sum of $2,300 will be required for the construction of said bridge. (4) That the whole cost of the construction of said bridge will exceed one fourth of one per centum of all the taxable property in said town according to the last equalized valuation thereof. The petition concluded with a prayer that the county board appropriate the other half of the cost of such bridge, viz., the sum of $2,300, and cause the same to be levied upon the taxable property of the county, in accordance with the provisions of ch. 187, Laws of 1885, and that the board appoint two of their number commissioners to co-operate with the supervisors of the town of *Rochester*. The petition was signed by all the members of the town board of supervisors, and was duly verified.

The board of supervisors of Racine county refused to grant the prayer of the petition. Thereupon the town of *Rochester* filed its petition in the circuit court of Racine county, setting forth, in substance, (1) that the town of *Rochester* is a municipal corporation, etc. (2) That Fox river runs through the said town of *Rochester;* that the old United States road between the city of Janesville and the city of Racine, being the road now traveled between the village of Rochester and the city of Racine, crosses said Fox river at said place, being the point where said river intersects the section line between the sections 2 and 11 in said town; that said town has a large amount of travel, and numerous divergent roads lead to it; that the bridge crossing the river at the said point is a public necessity, and has been from early times; that at the freshet of 1881 the bridge crossing said river at that point was swept away;

that temporary bridges have been maintained since then by the town of *Rochester*, but that, previous to the times here inafter mentioned, said bridges have been largely destroyed, and that it now becomes necessary to repair and rebuild the bridge at said point in a substantial manner; that specifications, plans, and estimates have been obtained for the rebuilding and repair of the bridge in a substantial manner at said point, and that the cost of repairing and rebuilding said bridge will be the sum of $4,600, as your petitioners are informed and verily believe. (3) That the drawings and specifications for the bridge were submitted to the board of supervisors of the county of Racine; that the place for rebuilding said bridge lies wholly within the town of *Rochester*, and that said town is obliged by law to keep up and maintain said bridge; and that the total amount of the taxable property in said town, according to the last equalized valuation thereof, is $410,400, and no more. (4) That at an adjourned annual meeting of the town of *Rochester*, lawfully held at the town of *Rochester* on the 22d day of May, 1886, at the place where the last town meeting was held, the electors of said town did by proper vote pass and adopt the following resolutions, namely: [As no question is raised upon the sufficiency of these resolutions, it will only be necessary to state briefly their substance.] The resolutions are preceded by a preamble setting forth that the temporary bridge across the Fox river in the village of Rochester, so called (stating the exact place of the bridge), necessitated and built under the requirements for general public travel, following the destruction of the iron bridge built by the town in 1877 and destroyed by the freshet of 1881, at a large cost to the town, has ever since been swept away, in whole or in part, every spring without exception, thereby inconveniencing travel and subjecting the town to a large annual expense for construction and repairs. Then follow resolutions (1) for the construction of a new bridge in the same place; (2) a resolution appropriating $2,300, or

so much thereof as shall be necessary to pay for one half of the expense of building such new bridge; (3) a resolution instructing the town board of supervisors to take measures to petition the county board of Racine county, under ch. 187, Laws of 1885, for assistance in building said bridge, giving the names of the several supervisors composing said town board.

The petition then alleges that at a special meeting of the electors of the town of *Rochester*, duly and lawfully called, noticed, and held on the 20th day of November, 1886, for that purpose, the following resolutions were by said electors duly passed: "Whereas, by the report of the committee submitted to the adjourned annual town meeting on May 22, 1886, it appears that a bridge such as is contemplated and hereinafter described is estimated to cost not more than $4,645; and whereas, it is believed that the whole work can be secured for $4,600; now, therefore, resolved, that the bridge voted to be built at said meeting, May 22, 1886, be a new, permanent bridge to be built across the Fox river at the village of Rochester, at about the point from which the former bridge was carried away, upon substantially the following specifications, provided that the cost shall not exceed $4,600." Here follow the specifications; then a resolution as follows: "Resolved, that the vote and resolution adopted at said meeting of May 22, 1886, appropriating $2,300 or so much thereof as may be necessary to pay one half the cost of such bridge, be and is hereby confirmed and concurred in; and that said sum of $2,300 be levied and collected as taxes for the year 1886, to be used for the purpose of paying for one half of the cost of said bridge." Then follow resolutions authorizing the chairman of the town board to take all proper measures to present a proper petition to the county board at its special annual meeting, requesting said county board to appropriate the sum of $2,300 to aid in the construction of said bridge, under the provis-

ions of said ch. 187, Laws of 1885, and, in case the county board shall refuse to appropriate the sum, then the said chairman is authorized and directed to commence, on behalf of the town, a proper action to compel the county board to make such appropriation. That the following resolution was also passed at said special town meeting: "Resolved, that the town board of supervisors are authorized, in conjunction with the two commissioners to be appointed by the county board, to contract for the building of a bridge, in substantial accordance with the foregoing specifications, at the best price obtainable from responsible parties, not exceeding $4,600."

The petition then alleges that the town of *Rochester* has provided for the payment of one half of the cost of the building of such bridge, viz., $2,300, and that the additional sum of $2,300 is necessary to be raised by the county of Racine for the building of said bridge. It further alleges the presentation of the petition of the said town of *Rochester*, above set forth, to the county board of supervisors of Racine county, at the annual meeting of said board on the 22d day of November, 1886, reciting the petition at length; and then alleges that said county board refused, on the 11th day of January, 1887, to appropriate the other half of the cost of said bridge, viz., the sum of $2,300, or any other sum whatever, and refused to levy said sum or any other sum upon the taxable property of said county, for the purpose of defraying the expense of constructing such bridge.

Upon this petition the circuit court issued its alternative writ of *mandamus*, reciting the whole of said petition, closing as follows: "Now, therefore, being willing that speedy justice should be done in its behalf, to wit, the said town of *Rochester*, we do command and enjoin you that, immediately after the receipt of this writ, you forthwith appropriate the one-half not provided for by the town of *Rochester* of the cost of repairing and rebuilding the bridge mentioned

herein, to wit, the sum of $2,300; and do cause to be levied upon the taxable property of said county such sum as will, with the amount provided by said town, be sufficient to defray the expenses of such bridge, to wit, the sum of $2,300; and designate two of the members of your said board, who shall act as its commissioners and act with the supervisors of the town of *Rochester* in the matter of letting, inspection, and acceptance of such work; or that cause be shown to the contrary before this court, at the regular March, 1887, term of said court, held on the 9th day of March, 1887, at the court-house in the city and county of Racine, at 10 o'clock in the forenoon of that day, or as soon thereafter as counsel can be heard."

To this writ the county board made return: (1) Admitting the corporate character of the town. (2) The location of the proposed bridge, the destruction of the bridge theretofore built at said place, and the necessity of rebuilding the same; but deny that the rebuilding of such bridge will necessarily cost the sum of $4,600. (3) Denies that the adjourned annual meeting of the electors of said town of *Rochester*, as set forth in the writ, was lawfully held, or that the electors of said town did by proper vote pass and adopt the resolutions therein set forth; but alleges the truth to be that the said so-called adjourned annual town meeting was not called as provided by law; that said meeting was convened in the afternoon on said 22d day of May, 1886, and that, immediately after the adoption of the so-called resolutions, the said meeting adjourned, and without holding said meeting open for one hour after adopting said resolutions,— all of which appears from the record of said meeting in the office of said town clerk of *Rochester*. (4) A similar denial of the legality of the special town meeting held on the 20th day of November, 1886, alleging similar grounds for the irregularity. (5) Denies that the town has ever provided for the payment of one half the cost of said

bridge, except by the proceedings in this answer referred to; and also denies that it is necessary for the county to raise the sum of $2,300 for the purpose of rebuilding said bridge. (6) Admits that the relator presented the petition set forth in the relator's petition for the writ of *mandamus*, but denies that all the allegations of said petition are true, and alleges the truth to be —"*first*, that the sum of $4,600 is not needed to construct a suitable bridge at the place described in said petition; *second*, that the town of *Rochester* has not provided for the payment of one half of the sum required for the construction of said bridge, except by the proceedings in this return referred to; *third*, that the village of Burlington in said county does not maintain its own bridges as stated in the petition, and that in presenting and filing said petition said relator did not impose upon the respondent any specific legal duty." Admits that the prayer of the petition was refused by the county board, and further answers as follows: "(7) By way of avoidance of the claim of the relator herein, the respondent alleges that the Fox river, across which the proposed bridge is to be constructed, is, at the place described in said alternative writ, a meandered stream within the meaning of sec. 1320, R. S., as amended by ch. 345, Laws of 1885; and that, even though all of the facts set forth in said alternative writ be true, this respondent had no authority to grant the prayer of the petition of the relator. (8) And further answering, by way of avoidance of the claim of the relator herein, the respondent alleges that on the 17th day of October, 1885, the said town of *Rochester*, relator, entered into a contract with the Milwaukee Bridge Company, of Milwaukee, Wisconsin, for the construction of a bridge across the Fox river aforesaid, at the place named and described in said alternative writ; that said bridge so contracted for was to be constructed in part from the material then composing a bridge owned by the relator, and at an expense less than one fourth of one

State ex rel. Town of Rochester vs. Board of Sup'rs of Racine County.

per centum of the taxable property of said town according to the equalized valuation thereof for the year 1885, and was suitable and sufficient for all purposes required; that the said relator has fully concurred in and confirmed said contract, and has paid the sum of $700 thereon; and that the work so contracted for is now the property of said relator, and is held for it at Milwaukee, by said Milwaukee Bridge Company."

The relator demurred to the return of the respondent, (1) "for the reason that upon the face thereof it does not state facts sufficient to constitute a defense to the prayer of the petition." (2) "The relator further demurs to the separate defense set up in the seventh paragraph of the return, for the reason that it does not state facts sufficient to constitute a defense." (3) "The relator further demurs to the separate defense set up by the eighth paragraph of said return, for the reason that upon the face thereof it does not state facts sufficient to constitute a defense."

On the hearing of the demurrers to the return of the respondent, the court entered the following order: "Ordered that said demurrer be and is hereby sustained as to the first and second parts thereof, excepting as to the defense set up by the eighth paragraph of said return, and that said demurrer to the separate defense set up by said eighth paragraph of the return be and is hereby overruled. And it is further ordered that the respondent have twenty days after the service of this order upon him in which to amend his return, and that the relator have twenty days from this date in which to reply to the separate defense set up by said eighth paragraph. And further ordered that no costs are awarded to either party upon this demurrer."

From that part of the order sustaining the demurrer of the relator the respondent appeals to this court.

*T. M. Kearney,* for the appellant, contended, *inter alia,* that the illegality of the elections relied upon by the rela-

tor in making its application for the writ was proper mat-
ter of defense. *State ex rel. Field v. Saxton*, 11 Wis. 27;
*State ex rel. Gates v. Fetter*, 12 id. 567; *State ex rel. Field v.
Avery*, 14 id. 122. The meetings referred to were *elections.
Phillips v. Albany*, 28 Wis. 340. The question whether the
petitioner is entitled to the relief sought may be litigated
in this proceeding. *People ex rel. Freer v. Canal Apprais-
ers*, 73 N. Y. 443; *People ex rel. Fiedler v. Mead*, 36 id.
224; *State ex rel. Lord v. Supervisors*, 2 Pin. 552.

For the respondent there was a brief by *Dodge & Fish*,
and oral argument by *Mr. Dodge.*

TAYLOR, J. The learned counsel for the appellant claims
that the allegations in the return clearly show that the
adjourned town meeting mentioned in the relator's petition,
as well as the special town meeting therein mentioned and
referred to, were not lawful town meetings, and so show
that the relator, the town of *Rochester*, was not placed in a
position to call upon the respondent to act under the pro-
visions of said ch. 187, Laws of 1885. He also claims that
the seventh paragraph of the return is a full defense to the
writ, because it shows that the county board as such has no
power to appropriate any money for the purpose mentioned
in said writ. The substance of said ch. 187, Laws of 1885,
is stated in the opinion in the case of *State ex rel. Baraboo
v. Sauk Co., ante*, p. 485 (filed at the same time as this opin-
ion), and need not here be restated at length.

Assuming that it was not necessary for the electors of
the town of *Rochester* to vote by ballot upon the question
of the necessity of building the bridge in question, or upon
the question of raising the money for that purpose by a tax
upon the taxable property of the town, or upon the ques-
tion whether the town would call upon the county board of
supervisors of the county of Racine to aid in the construc-
tion of such bridge, or upon the question of directing the

supervisors of the town to take the proper steps under said law to require the county board to aid in building said bridge, or upon the question of directing said supervisors to commence an action to compel the county board to grant such aid, we are of the opinion that the facts set up in the return do not show that said adjourned or special town meetings, or either of them, were illegal or unauthorized town meetings. A town meeting is a deliberative body, and acts, in determining all matters that may lawfully be determined by it, as any other deliberative body, except in the election of certain officers of the town, and except in matters as to which, by express law, the question to be determined by the electors of the town is required to be determined by a vote by ballot. *State ex rel. Bruce v. Davidson*, 32 Wis. 114, 121; sec. 795, R. S. "Any annual town meeting may be adjourned to any other day, and from any time to any time, for the purpose of transacting any business of the town, except for the election of officers." Sec. 785, R. S. There is no provision in the statute requiring any adjourned or special town meeting to be held at any particular hour of the day, or be open for the transaction of business at any particular hour, or to be held open for any particular time, except at a town meeting when officers are to be elected. See sec. 796, R. S.

The allegations in the return upon which the illegality of said adjourned and special town meetings are predicated, are that they were not called to order in the one case until the afternoon, and in the other until 1:30 P. M.; and that the meetings adjourned within an hour after the resolutions passed at such meetings were adopted. There is no allegation that the adjourned meeting was not adjourned to the time when the same was convened in the afternoon, nor that the special meeting was not called to be held at 1:30 P. M. of the day on which the same was held, or that the special meeting was not properly called as prescribed by law.

The theory of the return is that every adjourned and special town meeting must be called to meet between the hours of 9 and 10 o'clock A. M., and must be held open until 5 o'clock in the afternoon, as prescribed by sec. 796, R. S., for a town meeting for the election of officers. We find nothing in the statute requiring this to be done in the case of adjourned or special meetings held for merely deliberative purposes and for the transaction of business not requiring a vote by ballot.

There is nothing in the return which shows that the adjourned and special town meetings were not properly called and fairly conducted; and if the electors had the power to vote the tax, and transact the other business transacted at such meetings, without voting by ballot, then the county board can have no reason to complain. See *State ex rel. Bruce v. Davidson*, 32 Wis. 120, and the cases there cited.

It is contended by the learned counsel for the relator that when a petition is presented and filed by the town board of supervisors of any town setting forth the fact that said town has voted to construct or repair any bridge or bridges wholly or partly within such town, designating the location of such bridge or bridges, and stating that such town has provided for the payment of one half of the cost of such construction or repairs, and that the cost of said bridge or bridges or repairs exceeds one fourth of one per centum of all the taxable property in said town according to the last equalized valuation, the county board must make the appropriation required by the statute; that the county board cannot go behind the petition and attack the legality of the proceedings on the part of the town or contest the necessity for building or repairing the bridge or bridges or the cost thereof. In this case there is no necessity for passing upon this question, as we hold that the proceedings of the town were regular and legal, and the county board admits the duty of the town to construct the bridge in

question, as well as the necessity for so doing; and the right of the county to contest the question of the cost of the bridge and whether it would be necessary to expend a sum exceeding one fourth of one per centum of the taxable property of the town, was decided by the circuit court in favor of the appellant. The changes made in the law since 1871 seem to furnish some ground for the contention of the learned counsel for the relator. See original law, sec. 115, ch. 19, R. S. 1858, as amended by ch. 13, Laws of 1866 (1 Tay. Stats. 511); ch. 126, Laws of 1879; ch. 315, Laws of 1881; and ch. 187, Laws of 1885. The law, previous to 1885, required the county board to act upon information to be obtained by such board before the board was required to act. But the law of 1885 changes this radically, and requires the county board to act upon a petition to be presented by the town, alleging the existence of certain facts. As said above, we are not called upon in this case to decide how far the allegations of the petition presented by the town are conclusive upon the county board.

The learned counsel for the appellant relies mainly upon the seventh paragraph of the return as a full defense to the writ. It is claimed that neither the town nor the county has any power to appropriate money for the construction of the bridge in question until the question of levying a tax for that purpose has been first submitted to the electors of the town and county in the manner prescribed by sec. 1321, R. S., and that consequently the county board has no power to make the appropriation or to levy the tax as required by said writ of *mandamus*. This contention is based upon the fact that said paragraph alleges that, at the place where the bridge is proposed to be built over the Fox river, such river is a meandered stream within the meaning of sec. 1320, R. S.; and that under the provisions of said secs. 1320, 1321, R. S., no money can be appropriated by either the town or county board for such purpose until such appropri-

ation and tax are authorized by a vote by ballot of the electors of such town and county, as prescribed by sec. 1321, R. S. If the building of the bridge in the case at bar in the manner proposed, by the joint action of the town and county, comes within the provisions of said sections, properly construed, then the objection to the proceedings of the town would seem to be fatal to the action, and the demurrer to that part of the answer should have been over-ruled.

In order to give a reasonable construction to these sections, and one which shall to some extent harmonize with the other provisions of law upon the subject of the construction, repair, and rebuilding of bridges, it will be necessary to look to the origin of the provisions, and, as near as we can, get at the intention of the legislature in enacting them. The substance of these sections was first enacted as a law of the state by ch. 229, Laws of 1874. The act is entitled "An act to authorize counties, towns, cities, and villages to levy a tax for the building and aiding in building and construction of bridges in certain cases, and to issue bonds in aid thereof." The only material difference between this act and the present provisions in secs. 1320, 1321, R. S., is that the law of 1874 authorized a tax of two per centum to be levied, or bonds for that amount to be issued; and sec. 1320, R. S., limits the power to levy a tax for five mills on the dollar valuation, or to issue bonds for such purpose to the amount of two per centum of the valuation. The limitation of the tax to five mills on the valuation was made by sec. 2, ch. 252, Laws of 1877; and the law of 1874, as amended by sec. 2, ch. 252, Laws of 1877, was transferred to the Revised Statutes of 1878 as secs. 1320, 1321.

At the time of the passage of ch. 229, Laws of 1874, the county board had authority, without any vote of the electors, to levy a tax not exceeding $15,000 on the taxable property of the county, as a special county road tax, to be

expended as provided in that chapter; and the county board also had the power, under sec. 115, ch. 19, R. S. 1858, as amended by sec. 1, ch. 13, Laws of 1866 (1 Tay. Stats. 511–512), to appropriate any sum of money which in the judgment of the county board might seem advisable, to "erect and repair any necessary bridge or bridges" in the county, or to pay a part of the expenses of such erection or repair, without any vote of the electors on the question. The legislature by sec. 1, ch. 252, Laws of 1877, limited the power of the county board to levy taxes for building and repairing roads and bridges to the sum of $8,000, instead of $15,000, as provided by ch. 152, Laws of 1872. It will be noticed that the power granted by ch. 152, Laws of 1872, conferred the power to levy a tax of $15,000 for the purpose of building and repairing roads in the county, and that the amendment which limited the tax to $8,000 per year was for the purpose of building and repairing roads and bridges in the county. This ch. 252, Laws of 1877, by its second section, amended ch. 229, Laws of 1874, so as to limit the taxation under said chapter to five mills on the dollar valuation. At the time of the enactment of said ch. 229, Laws of 1874, and its amendment in 1877, the town had the power under sec. 2, ch. 15, R. S. 1858 (1 Tay. Stats. 349), to vote, at any legal town meeting, "to raise money for the purpose of building roads and bridges." No limitation was fixed. By sec. 1, ch. 131, Laws of 1866 (1 Tay. Stats. 478), the supervisors of the town, whenever bridges needed repairs in the town and no sufficient amount of money had been provided for that purpose by the town, had the power to cause such bridges to be repaired, and for that purpose to spend not exceeding $500 in any one year, and place the amount in the next tax roll. By sec. 113, ch. 19, R. S. 1858, as amended by sec. 1, ch. 63, Laws of 1867 (1 Tay. Stats. 511), the supervisors of the town were authorized to levy and collect a tax for the purpose of building and maintaining suitable and perma-

nent bridges and causeways across any river, stream, creek, swamp, or marsh in the town, whenever they should deem it necessary for the public interest and convenience to rebuild, repair, or maintain such bridges or causeways; limiting the amount to be levied to $300 for any one bridge, and that but one such tax should be levied in any one year.

The above-mentioned provisions of law in regard to the powers of towns and counties to appropriate money and levy taxes for the building and repair of bridges were none of them expressly repealed by said ch. 229, Laws of 1874, or by any amendment made thereto since its enactment; and all said provisions of law were substantially re-enacted in R. S. 1878, except sec. 113, ch. 19, R. S. 1858, as amended by sec. 1, ch. 63, Laws 1867. See subd. 1, sec. 776, as to the power of towns to vote taxes at town meetings for building and repairing roads and bridges, and sec. 1318, as to the authority of the supervisors to raise money for the rebuilding or repairing bridges; also sec. 1225, R. S., of the power of the supervisors to appropriate money raised for highway purposes for the repair of bridges in the town; sec. 1308, of the power of the county to levy taxes to keep in repair certain highways; and sec. 1319, of the power of the county board to raise taxes for the purpose of building or repairing in any town when the board shall think a bridge in any town necessary. Sec. 1320, R. S., is amended by sec. 3, ch. 345, Laws of 1885, so as to authorize two adjoining towns to unite in building or maintaining, or aiding in the building or maintaining, a bridge across a navigable or meandered stream, in the same manner that a town, county, or city was authorized to do by the original act of 1874.

This law of 1874 should be construed so as to harmonize with the other laws then in force. It contains no repealing clause, and the legislature evidently considered that it did not conflict with the other laws in force upon the same subject. It was a law which was intended to confer a power

not before conferred on the county, town, city, or village, and to regulate the exercise of the power so conferred, and not a law intended to take away, restrict, or limit the powers theretofore conferred by law upon the county, town, city, or village. Thus construed, the law may be beneficial, and will not disturb or disarrange the other laws in existence conferring powers upon the counties, towns, cities, and villages for the construction, rebuilding, and repair of bridges. Thus construed, the law is clearly applicable to cases where the town, county, city, or village had not, before the passage of the act of 1874, the authority by law to build or maintain a bridge across a navigable or meandered stream, and is not therefore applicable to the case at bar. This construction of the act of 1874 is in accord with the title of the act as above quoted. The title shows that the act was intended to give authority to construct bridges in certain cases, and not to restrict the building of bridges when the power was already vested in the county or town.

That the town of *Rochester* had the power to maintain and rebuild the bridge in question is clear from facts alleged in the petition for the writ of *mandamus*, and is as clearly admitted by the return to the writ by the respondent. The allegation in the petition for the writ is, after describing the point where the bridge is proposed to be built, "that said town has a large amount of travel, and numerous diverging roads leading to it; that the bridge crossing the river at that point is a public necessity, and has been from early times." At another place it is alleged that the town had built in the same place an iron bridge in 1877, which had been swept away by a flood in 1881. The return of the respondent admits "the location of the bridge, also the destruction of the bridges heretofore built at such place, and the necessity of rebuilding the same." We must infer from these statements of the relator, the return of the respondent, and the fact that this bridge has been in existence

at the place indicated from the early settlement of the county, that its original construction was authorized by law; and looking into the early legislation of the territory we find an act which, by clear implication, authorized the construction of this bridge, if any special act of the legislature be necessary to confer authority upon the town. See act No. 27, Terr. Stats. 1838. This act legalizes and establishes a territorial highway from Racine, on Lake Michigan, to the Mississippi river, passing through Mt. Pleasant, *Rochester, on the Fox river*, and Janesville, on the Rock. The bridge in question seems to have been a part of this highway, crossing the Fox river at Rochester, and was therefore authorized by law long before the act of 1874 was passed.

Giving the construction to the act contended for by the appellant, no town, county, city, or village could expend a dollar to repair or rebuild or construct a bridge over a navigable or meandered stream or river without first submitting the question of such expenditure to a vote of the electors of the municipality, and a vote by ballot taken upon the question of such expenditure. It does not seem to us that such could have been the intention of the legislature. The same construction must be given to the act as re-enacted in the Revised Statutes that would have been given to it before it was embraced in such statutes and while it remained a separate and independent chapter of the law. See *State ex rel. Att'y Gen. v. Messmore*, 14 Wis. 177; *Buckstaff v. Danville*, 14 Wis. 77, 78. We think it clear that the act of 1874 does not restrict the county, town, city, or village from rebuilding or repairing a bridge which the county, town, city, or village had legal authority to rebuild or repair previous to the enactment of ch. 229, Laws of 1874, and therefore is no bar to this proceeding on the part of the relator.

Whether the general, and apparently absolute, power

given to the town and county jointly, under sec. 1319, R. S., as amended by ch. 345, Laws of 1885, to construct certain bridges, is to be limited in any case by the restrictions in secs. 1320, 1321 as amended, it is unnecessary to decide in this case; nor whether a town, county, city, or village, having once constructed a bridge under the provisions of said secs. 1320, 1321, may thereafter appropriate money and levy taxes to rebuild or repair the same without resorting to the proceedings prescribed by said sec. 1321, R. S., as amended.

*By the Court.*— The order of the circuit court appealed from is affirmed, and the case is remitted to the circuit court for further proceedings.