# CASES DETERMINED

AT THE

## August Term, 1904.

NORTHERN SUPPLY COMPANY, Appellant, vs. WANGARD, Respondent.

*September 27—October 18, 1904.*

*Pleading: Waiver of reply to counterclaim: Sales: Written contract: Warranties: Representations by agent: Delivery of defective goods: Damages: Special verdict: Diligence to prevent loss: Evidence: Opinions: Instructions to jury.*

1. Where a defendant treated the allegations of his counterclaim as at issue by proceeding with the trial until the close of the evidence before suggesting that there was no reply, he thereby waived the objection.
2. Under a written contract plaintiff sold defendant, a retail grocer, a quantity of "good" potatoes. *Held*, that this called for potatoes of good merchantable quality having at least ordinary keeping qualities, but that there was no implied warranty that they would be fit for the purpose for which they were bought, the only warranty being that the potatoes delivered in execution of the contract were free from latent defects rendering them not such potatoes as the contract called for.
3. A contract of sale being in writing and containing no express warranty, the question whether the vendor's agent who made the contract had authority to bind his principal by warranty is immaterial.
4. So, also, the question whether certain representations, claimed to have been made by the agent at the time the contract was made, were statements of fact or mere expressions of opinion, is immaterial.
5. Upon a sale of "good" potatoes to a retail grocer, known to be such by the vendor, the latter was chargeable with knowledge

of the probability that the potatoes sold would be mixed with others and, if liable soon to decay, would injure such others, and may therefore be held liable for such injury to the vendee's other potatoes resulting from breach of the contract in delivering potatoes which were not such as the contract called for.

6. In such a case the vendee cannot complain of a verdict finding that fifty bushels of other potatoes were spoiled by mingling those sold with them, on the ground that the undisputed evidence showed that seventy-five bushels were so spoiled.

7. A question submitted in a special verdict, "Were all the potatoes furnished by the plaintiff to the defendant of the kind and quality agreed to be furnished?" was not multifarious.

8. The vendee's general damages for breach of the contract by delivery of potatoes which were not such as the contract called for are limited to the difference between the market value of those delivered, at the time and place of delivery, and the value they would have possessed had they been according to contract; and a special verdict which fails to find such market value of those delivered or such difference is fatally defective.

9. A finding of the jury charging the vendor with the entire responsibility for the destruction of the potatoes sold and also of other potatoes with which they were placed in the vendee's cellar, is *held* inconsistent with the undisputed evidence that after the vendee had discovered the rotting condition of the new potatoes he made no attempt to remove them or to save the old ones, except as a few were picked out from time to time for his retail trade, until the entire lot became a decayed and worthless mass.

10. The vendor is not chargeable in such a case with any loss which the vendee could by the exercise of ordinary care have prevented.

11. The vendee, as soon as he discovered that the new potatoes were rapidly decaying, should have removed them from the cellar and saved the old potatoes, and might recover the reasonable cost of so doing; but he was not entitled to recover the cost of sorting over a few occasionally for his retail trade and of removing the rotten mass that remained.

12. Evidence as to the best method of handling potatoes found to be rapidly decaying was not immaterial, but had a bearing upon the question whether the vendee had exercised ordinary care to prevent loss.

13. The question whether the potatoes when delivered by the vendor at the agreed place were of good, sound, white stock

was a proper one for opinion evidence, but under the written contract in this case, calling only for "good" potatoes, was immaterial.

14. So, also, under the contract, the question as to what kind of soil the potatoes were grown in was immaterial.

15. Upon the question whether the vendor knew, at the time of the sale, the purpose for which the potatoes were purchased, it was proper to instruct the jury that knowledge of the vendor's agent who made the sale was imputable to the vendor, and language, in that connection, to the effect that acts, statements, and knowledge of the agent when the contract was made were binding on the vendor, is *held* not likely to have misled the jury to understand that the vendor was bound by unauthorized warranties made by the agent.

16. An instruction permitting the jury to apply their own knowledge and experience in determining what the evidence established upon a question of fact, was erroneous.

17. Upon the question whether a person of ordinary intelligence in the exercise of ordinary care, by inspecting potatoes after their arrival and before their removal from the car, could have determined whether they were of the kind and quality agreed upon, an instruction that "he would not be required to look at the whole mass in the car or look at them other than in a fair and reasonable way," etc., is *held* to invade the province of the jury.

APPEAL from a judgment of the circuit court for Lincoln county: W. C. SILVERTHORN, Circuit Judge. *Reversed.*

Action to recover for a car of potatoes sold by plaintiff to defendant free on board cars at Tomahawk, Wisconsin, shipment to be made from a point elsewhere.

The complaint was in the usual form of a declaration on contract to recover for property sold and delivered at an agreed price. As it was amended on the trial, the amount claimed was $186, the price of 600 bushels of potatoes at 31 cents per bushel, less $41.80, paid thereon. The defendant admitted making a contract with plaintiff for the potatoes and the pretended execution thereof by delivery of the potatoes mentioned in the complaint, but alleged the following facts for a defense and counterclaim: The potatoes were sold under an agreement, providing for delivery at Tomahawk,

freight paid, of potatoes of good, sound, white stock, suitable
for the plaintiff's business, and that would keep well. The
potatoes were not of the kind or quality agreed upon. They
were not raised on sand and were not sound when shipped,
or good white stock, but were defective and worthless. Plaint-
iff knew when the potatoes were purchased the particular pur-
pose for which they were designed, and that those sent were
worthless therefor. Defendant received the potatoes, relying
on the agreement aforesaid, paying $36.07, freight thereon.
The defects in the potatoes were of a character not observable
by ordinary attention thereto. As soon as the potatoes were
received defendant commenced selling them by retail. Com-
plaint was soon made by customers that they were defective
and not fit for use, whereupon defendant notified plaintiff,
with the result that it refused to receive back the property or
concern itself at all in respect thereto. By reason of the de-
fective condition of the potatoes it became necessary to assort
them at an expense of $25, to the defendant's damage in such
sum. He placed the potatoes, before knowing of their condi-
tion, in his cellar upon about seventy-five bushels of good po-
tatoes, which were in consequence destroyed, to his damage
in the sum of $30. In the course of thirty days after the
potatoes were put in his cellar, by reason of their condition,
defendant was obliged to remove them therefrom and throw
the same away, to his damage for such removal in the sum of
$13. Potatoes of the quality contracted for when those in
question were received were worth 35 cents per bushel, or
$210 for 600 bushels, while those delivered were not worth
to exceed $60, to the defendant's damage in the sum of $150.
Judgment was prayed for such several sums.

The cause was commenced in justice's court and carried
to the circuit court by appeal. Some amendments to the com-
plaint and to the answer were there allowed. No reply
was interposed. Such amendments did not materially change
the aspects of the case, as before indicated. There was

evidence on the trial to the effect that defendant was a retail grocer; that he and plaintiff's agent, at the former's store in Tomahawk, had some negotiations respecting the sale of potatoes by the latter to the former, during which the agent represented that plaintiff could furnish good, sound white stock, raised on sand and that would keep all winter, and that upon such representations defendant agreed to take 400 bushels or more of such stock. There was further evidence to the effect that as a result of the negotiations a memorandum of the agreement entered into was made in these words:

"Dated October 6th, 1900.
N. S. Co., Amery.
Ship to *A. Wangard,*
At Tomahawk, Wis.
How ship—When—.
Terms—
400 bush. s'k'd potatoes or more, 31c.
Will order out.
                        "F. LANGENBACH."

—Such memorandum being made in triplicate, and one left with the defendant, one sent to plaintiff, and one retained by the agent. There was further evidence that pursuant to the condition indicated by the words "will order out" the potatoes were not to be sent till a communication was made in writing from the defendant to the plaintiff in these words:

                        "Tomahawk, Wis., Oct. 11, 1900.
"Dear Sir:— . . . You can send me 600 bushels of potatoes and one or two tons of ground corn and oats.  ·
                        "Yours truly, A. WANGARD."
"I want good potatoes. . . . If you can put more than 600 bushels of potatoes, I wish you would fill the car as big as you can."

There was further evidence as follows: Pursuant to such communication the potatoes in question were sent and in due course of time arrived at Tomahawk. The freight was

paid by the defendant and potatoes received into his posses-
sion. When they arrived, though they were defective and
not such as those agreed upon, the defects were not discover-
able by the exercise of ordinary attention to the matter, nor
until after the potatoes were placed in defendant's cellar.
They were so placed and on top of about seventy-five bushels
of good potatoes. About two or three days thereafter, it being
suggested by customers to whom some of the potatoes had
been sold that they were not suitable for use, those remaining
in the cellar were examined and found to be very defective,
and in no sense such as plaintiff agreed to deliver. There-
upon plaintiff was notified that the potatoes would not be ac-
cepted in satisfaction of the contract. Thereafter, from time
to time, small portions of the potatoes were assorted in order
to obtain those which were salable, to satisfy the wants of
customers dealing at the defendant's store. The potatoes
were handled in that manner for some three weeks. At the
end of that time those which remained had become a mass of
decayed and filthy matter and entirely worthless. Shortly
thereafter such decayed mass, which included the remnants
of the potatoes purchased and of the seventy-five bushels,
which were in the cellar when the former were placed therein
as aforesaid, was removed and cast away. The cellar at this
time was in a very filthy condition. Water from the decayed
mass had accumulated therein to a considerable extent, and
the odor therefrom so tainted the atmosphere in the store
above that customers would hardly venture therein. Proof
was further made of the cost of removing the decayed mass
as aforesaid, of the amount of salable potatoes that were se-
cured, and of the value of such potatoes as those contracted
for at the time of the delivery. Such further reference to the
facts as may be necessary to the treatment of this case will be
found in the opinion.

At the close of the evidence defendant moved for judgment
upon the ground that no reply was made to the counterclaim

contained in the answer. The motion was denied. The cause was then submitted to the jury for a special verdict. Such exceptions taken to the interrogatories composing the same and the instructions given in respect thereto as seem to be necessary to an understanding of the question, are discussed in the opinion. The jury found in substance, as follows:

The plaintiff and defendant bargained for the sale of 600 bushels of potatoes, to be delivered by the former to the latter on board cars at Tomahawk at thirty-one cents per bushel. Plaintiff knew the purpose for which the defendant purchased the potatoes. It was not agreed that the defendant should inspect the potatoes before removing the same from the car, and then reject them if not found satisfactory. A person of ordinary care could not by ordinary attention to the matter have discovered by inspecting the potatoes at the time they arrived at Tomahawk, before removing them from the car, that they were not according to the agreement. Two hundred bushels only of the potatoes delivered were according to contract. None of the potatoes spoiled after the receipt thereof by defendant as the direct and natural consequence of his not properly caring therefor. Four hundred bushels of the potatoes spoiled as a direct natural consequence of defects existing therein at the time of the delivery to defendant. The wholesale market price of such potatoes as those agreed upon, at the time the delivery was made, was thirty-one cents per bushel. The reasonable expense of removing the rotten potatoes from the cellar was $13, and of assorting the potatoes $10. Fifty bushels of good potatoes, which were in the cellar when the potatoes in question were received and placed therein, were spoiled as the direct and natural consequence of such placing. Notice was seasonably given to plaintiff that the potatoes would not be accepted as conforming to their agreement.

After the coming in of the verdict there was a motion to set the same aside, and for a new trial, which was denied. Judgment was thereupon entered and plaintiff appealed therefrom.

The judgment entered, as ordered by the trial court, upon the special verdict was in favor of the defendant for $18.27 and costs.

For the appellant there were briefs by *A. H. Woodworth,* attorney, and *Reid, Smart & Curtis,* of counsel, and oral argument by *E. M. Smart.*

For the respondent there was a brief by *G. M. Sheldon,* attorney, and *Flett & Porter,* of counsel, and oral argument by *Mr. Sheldon.*

MARSHALL, J. Respondent's counsel contend that the assignments of error to impeach the judgment cannot properly affect it since there was no reply to the counterclaim contained in the answer, and respondent was therefore entitled to the judgment obtained on the pleadings. If a reply were required, under the circumstances, in order to put the allegations constituting the counterclaim in issue, it was effectually waived by respondent's treating the same as at issue by going to trial upon the merits, and proceeding therein till near the close thereof before suggesting anything to the contrary. *Killman v. Gregory,* 91 Wis. 478, 65 N. W. 53; 18 Ency. Pl. & Pr. 650.

Appellant contends that the judgment is not sustained by the verdict for several reasons, which will be considered:

(a) The verdict and judgment are based on express warranty and one essential fact to sustain that, since it is undisputed that the contract on appellant's part was made by its agent, was neither found by the jury, nor was there any evidence on the question, such fact being that such agent had authority to bind his principal by warranty.

*Westurn v. Page,* 94 Wis. 251, 68 N. W. 1003, and *Waupaca E. L. & R. Co. v. Milwaukee E. R. & L. Co.* 112 Wis. Wis. 469, 88 N. W. 308, support counsel's proposition as to the law, but it does not apply to this case, because the contract here was in writing, contained no express warranty, and

the cause was not properly treatable upon the theory that there was such.

(b) The jury should have been required to determine whether certain representations claimed to have been made by the agent at the time the contract was entered into, were statements of fact or mere expressions of opinion.

We fail to see any application of the law touching that subject to this case. Since the contract between the parties was in writing, as before indicated, evidence as to what was said at the time of the making thereof, or prior thereto, or as to what was intended by the parties, or any oral evidence as to the terms of the agreement, or finding in respect thereto, independently of the writing, was immaterial. That seems to have been overlooked all through the trial. The failure to appreciate it needlessly complicated what would have otherwise been a very simple case. The sole source of information as to the terms of the contract is the memorandum of December 6, 1900, indicating that appellant agreed to sell to the respondent and ship to him as ordered, at Tomahawk, Wisconsin, 400 bushels "s'k'd" potatoes, or more, at thirty-one cents per bushel, and respondent's letter, dated October 11th thereafter, addressed to the appellant and directing it to ship 600 bushels of good potatoes.

(c) There is no finding that the potatoes were not reasonably fit for the purpose for which they were bought, nor that any particular quantity of old potatoes was destroyed because the new ones were not suitable for such use.

No such finding was necessary. Counsel for appellant seem to think because the breach of contract found by the jury was that the potatoes delivered were not such as the agreement called for, that it entirely failed to make out a breach of implied warranty; that such warranty, if any existed, was that the potatoes should be reasonably fit for the purpose for which they were bought. In that counsel confuse

the implied warranty, which often exists, that an article sold for a particular purpose known to the vendor at the time of the sale, is reasonably fit for such purpose, with the implied warranty that an article delivered in consummation of an executory contract is of the kind agreed upon, as regards imperfections not discoverable at the time of the reception thereof by ordinary attention thereto on the part of the purchaser. The latter is the warranty which respondent was entitled to recover on in this case, if entitled to recover at all.

(d) The jury should have been requested to find as a fact whether there was an implied warranty of fitness that the property delivered was reasonably suitable for the use such property was intended for.

Here again counsel fail to appreciate that no such warranty was involved in the case; that the only warranty there was, if any, was against defects not permissible by the contract which were not discoverable by ordinary attention on the part of the purchaser, as before stated.

The sufficiency of the verdict is otherwise challenged as will be hereafter shown.

The next assignment of error is that the finding in the special verdict, that the loss of the good potatoes, which respondent had when the new ones were received and placed therewith, was the direct and natural consequence of the breach of warranty complained of, did not justify, in any event, a recovery for such loss because there was no finding nor any evidence, that special circumstances existed known to the appellant when the contract was made from which it should reasonably have apprehended that such loss was liable to occur by its breach of contract. It seems to us otherwise. The evidence was undisputed that appellant knew respondent was a retail grocer. Therefore it must have apprehended at the time the contract was made that the placing of the new potatoes with old ones was within the probabilities. Further, as a matter of common experience, appellant must have

known that the mixing of potatoes that were liable to soon decay, with good ones, would probably result in injuring the latter. So all the essentials of the rule necessary to charge appellant with the damages to the old potatoes to the extent that they are attributable to the breach of contract complained of, were satisfied. True, appellant was not chargeable with any damages other than such as "may reasonably be supposed to have been in the contemplation of both parties when the contract was made as the probable result of the breach of it" (*Hadley v. Baxendale,* 9 Exch. 341, as condensed and approved by this court in *Brown v. C., M. & St. P. R. Co.* 54 Wis. 342, 11 N. W. 356, 911), and that special circumstances enhancing the damages that would ordinarily occur must always be brought home to the knowledge of the person charged therewith as of the time the contract was entered into, or the sufferer will be left remediless therefor (*Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119) ; but that was all satisfied in this case as to the loss of the old potatoes, as we have seen.

Further complaint is made that, since the evidence was undisputed and all one way that all of the seventy-five bushels of old potatoes was destroyed by reason of the new ones being placed thereon, the verdict that only fifty bushels were so lost was based on mere conjecture. We are unable to see why complaint should be made by the appellant because the jury erroneously found against it for a less loss than the whole of the old potatoes by reason of the contact thereof with the new ones, when the evidence was undisputed that all were so lost, if any were. Probably counsel for respondent would readily have consented to an amendment of the verdict in that respect. *Hickey v. C., M. & St. P. R. Co.* 64 Wis. 649, 26 N. W. 112, condemning a verdict based on conjecture, so far as we can see, has no application here. There it was clear that the verdict was a mere prejudicial guess, while at the best, here, all that is claimed is that the jury found against.

appellant for a loss less than that which the undisputed evidence established.

Did the court err in submitting to the jury this question, "Were all the potatoes, furnished by the plaintiff to the defendant, of the kind and quality agreed to be furnished?" It is insisted that such question was fatally defective because multifarious. We shall not follow the ingenious argument of counsel in support of that propostion to show what appears to us to be its obvious infirmity. The difficulty therewith, in the main, grows out of want of appreciation that respondent's claim was based wholly on breach of implied warranty that the potatoes delivered in execution of the written contract were free from latent defects rendering them not such potatoes as the contract called for. There was no need for any finding as to the terms of the contract, nor any finding as to the scope of the implied warranty. The former was in writing, the latter was a matter of law. The simple proposition submitted in the question, quoted, seems to be free from multifariousness by the most severe test that could be reasonably applied thereto.

The next assignment of error is, in effect, that the verdict is fatally defective for want of any finding of damages on a recoverable basis, or of facts of an evidentiary character from which the ultimate fact in that regard can be determined as a necessary conclusion. We see no escape from that contention. Respondent's general damages were limited to the difference between the market value of the property delivered at the time and place of the delivery, and the value at such time and place the same would have possessed had it been according to the contract. *Aultman & T. Co. v. Hetherington,* 42 Wis. 622. There was no direct evidence on that point, nor was there any finding directly thereon. The finding that the potatoes were not all according to contract; that 200 bushels were; that 400 bushels thereof spoiled in consequence of not being such as the contract called for; that such

potatoes as were so called for, at the time and place for the
delivery thereof, were worth thirty-one cents per bushel;
and that none of the potatoes were spoiled through fault on
the part of the respondent, if supported by the evidence at all
points, yet failed to establish, as a matter of law, the market
value of the potatoes delivered at the time and place of the
delivery. There should have been a specific finding on that
point. It was a vital matter in the case. Why a question in
respect thereto was not submitted to the jury, while a number
of questions covering mere evidentiary matters were sub-
mitted together with a number of questions which were en-
tirely unnecessary, in view of the fact that the contract be-
tween the parties was in writing, is not easy to understand.
It might well be that 400 bushels of the potatoes delivered
upon the contract spoiled during the course of four weeks
after they were put into the respondent's cellar, and even
without fault on his part, and yet that they were of some
value when they were taken into his possession.

Complaint is made because the court refused to take a find-
ing by the jury as to whether the appellant agreed that the
potatoes would keep for any particular length of time. No
such question was necessary since, as before indicated, the
agreement was in writing, rendering all oral statements about
the potatoes, at the time it was made, entirely immaterial.

The claim is made that the finding of the jury entirely
freeing respondent from all responsibility for the destruction
of either the old or the new potatoes, and charging appellant
with the entire responsibility in the matter, is inconsistent
in view of the undisputed evidence. It looks that way. The
evidence shows that on the second or third day after the po-
tatoes were placed in respondent's cellar he knew that they
were dangerously defective and were liable soon to become en-
tirely worthless; that he knew from day to day, after he first
discovered such condition, that it was rapidly growing worse,
yet that he made no attempt to remove the potatoes from the

cellar, or to save the seventy-five bushels of old ones, but allowed all to remain as they were when he first discovered the danger, except as potatoes were picked over from time to time to obtain a few good ones for his retail trade, till the entire lot became a decayed, filthy, and worthless mass of material. In the face of that, the jury exonerated respondent from all blame for the destruction of the potatoes, both old and new, and yet decided that such destruction was the natural and direct result of the condition the new potatoes were in when received by him. The fact that 400 bushels of the new potatoes spoiled after being placed in respondent's cellar was, as before indicated, only evidentiary of the value thereof when received. In no event could appellant be properly charged with such result unless it was one to be reasonably apprehended by both parties at the time of the making of the contract as a circumstance probable to occur from the breach of it. If appellant is chargeable with knowledge that respondent was liable to put the new potatoes with the old ones and that the end might probably be the destruction of both, certainly respondent is chargeable with such knowledge from the time he discovered the condition the new potatoes were in. With that in mind, the finding of the jury holding the former responsible for all that occurred after the new potatoes were placed in the cellar and exonerating the respondent from all fault, even for failing to make an effort to save the old potatoes from destruction and allowing the entire lot to remain in the cellar till it became a mass of filth, seems clearly absurd. It is considered that the findings by the jury, in view of the undisputed evidence, are inconsistent, and that the verdict exonerating respondent from all fault for the destruction of any of the potatoes is contrary to the evidence. That appellant is not chargeable with any loss which respondent could by the exercise of ordinary care have prevented, is elementary. *Fisk v. Tank,* 12 Wis. 276; *J. I. Case Plow Works v.*

*Niles & Scott Co.* 90 Wis. 590–606, 63 N. W. 1013; *Opten-berg v. Skelton,* 109 Wis. 241–244, 85 N. W. 356.

It is contended that the finding as to the reasonable cost of assorting potatoes in the cellar and removing therefrom those which were rotten is not warranted by the evidence. Such finding was taken upon the theory that it was permissible for respondent to leave the potatoes in the cellar for several weeks, knowing they were rapidly becoming a mass of worthless material, and pay no attention thereto, other than to sort over a few now and then to obtain small quantities of sound ones to supply retail trade, and then charge appellant with the cost of such sorting and that of removing the rotten mass that remained. That was by no means the reasonable charge for sorting potatoes and removing those that were rotten, having regard to the special damages for which appellant was liable. Clearly as soon as it became apparent to respondent that the potatoes were rapidly decaying, which was in two or three days after they were received, he should have removed them from the cellar and saved the old potatoes. The reasonable cost of doing that would be the extent to which respondent could be said to have been damnified by the breach complained of. What that would have been the record is entirely silent.

Testimony was ruled out as immaterial concerning the best method of handling potatoes upon its being discovered that they are in the condition those in question were found to be in two or three days after respondent received them. Such evidence was certainly not immaterial. It, at least, bore directly on whether respondent exercised ordinary care to prevent any unnecessary loss accruing because of the breach complained of.

A witness, against objection, was permitted upon a hypothesis supposed to be warranted by the evidence, to give his opinion as to whether the potatoes when they arrived at the

agreed place for delivery were of good, sound, white stock. It is suggested that the subject involved in the question was not one proper to be established by opinion evidence. It seems otherwise. It may well be that the condition of potatoes at one time may tell a far different story as to their condition a short time prior thereto, to a person of more than ordinary experience in observing such matters than to one who is not. Any subject wherein a person may become specially learned, or skilled, is within the broad field of opinion evidence. *Daly v. Milwaukee,* 103 Wis. 588, 79 N. W. 752; *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644; 1 Wharton on Evidence, § 444. Such evidence is not confined to mere matters of professional or scientific knowledge. It extends to a very wide field, as an examination of the authorities in this court and elsewhere will readily show. *Leopold v. Van Kirk,* 29 Wis. 548; *Salvo v. Duncan,* 49 Wis. 151, 4 N. W. 1074; *Brabbits v. C. & N. W. R. Co.* 38 Wis. 289; *Clason v. Milwaukee,* 30 Wis. 316; *Whitney v. C. & N. W. R. Co.* 27 Wis. 327; *Curtis v. C. & N. W. R. Co.* 18 Wis. 312; *Snyder v. W. U. R. Co.* 25 Wis. 60; *Griffin & S. Co. v. Joannes,* 80 Wis. 601, 50 N. W. 785. Whether a particular matter is or is not a proper subject for such evidence, and whether the witness presented is or is not competent to testify because of having special knowledge in respect thereto, is not always easy to determine. The questions in that regard, however, relate to mere competency, and, therefore, the trial judge's determination thereof, within all reasonable limits is supreme. We see no reason to overturn the judge's ruling in the instance before us upon the ground that the testimony was immaterial because the matter was not a proper subject for expert evidence. However, it was immaterial on another ground very clearly. The contract did not call for the kind of potatoes mentioned in the question. It merely called for good potatoes. Potatoes that were sound and reasonably good keepers, no doubt.

The court refused to permit appellant to prove what kind

of soil the potatoes were grown in. That was proper. The assignment of error in respect thereto was doubtless made by reason of counsel's overlooking the fact, often alluded to, that the written contract, not the conversation in relation thereto, governed the matter. There was nothing in the writing as to what kind of soil the potatoes should be the product of.

Complaint is made because, in respect to the interrogatory as to whether the plaintiff knew when the potatoes were sold the purpose for which they were purchased, the court instructed the jury that knowledge of plaintiff's agent in respect to the matter was imputable to the principal. The question was asked as one bearing on whether plaintiff had, at the time the contract was made, knowledge of special circumstances as regards how respondent would probably handle the potatoes, rendering it liable for special damages. It is conceded that as to such matter the instruction was proper. The court, however, used language to the effect that the acts, statements and knowledge of the agent when the contract was made were binding on the principal. It is said, that it informed the jury that plaintiff was bound by any warranty the agent may have made, though he was not specially authorized thereto by his principal. That may be, but there was no such warranty involved in the question, and it is not likely the jury understood the instruction to be broader than the subject to which it related, though it would be safer to use more guarded language.

The court instructed the jury on the question as to whether it was agreed that the potatoes should be examined when they arrived at Tomahawk and accepted or rejected before being taken from the car:

"You are to bring your own knowledge and experience in determining what the evidence and all the evidence and circumstances submitted for your consideration applicable to this question really establishes and means."

The question itself was out of place. The written contract made no mention of any such agreement, moreover the instruction, so far as it permitted the jury to apply to the matter any special knowledge of their own, was erroneous. That is according to elementary principles.

On the question as to whether a person of ordinary intelligence in the exercise of ordinary care, by inspecting the potatoes after they arrived at Tomahawk and before removing them from the car, could have determined whether they were the kind and quality agreed upon, the court instructed the jury in these words: "He would not be required to look at the whole mass in the car or look at them other than in a fair and reasonable way," etc. The complaint that the province of the jury was thereby invaded seems to be warranted. The nature of the inspection necessary to come up to the standard of ordinary care in the circumstances presented was wholly a subject for the jury to determine. Whether an examination sufficient to enable one to inform himself in a general way of the character of the entire car of potatoes may or may not have been required to come up to the necessary standard of care, was a jury question. There are but few situations where it is safe to instruct, as a matter of law, what is and what is not consistent with ordinary care.

Now we have specially or generally considered all of the assignments of error. Those that have not been named specifically are involved in and decided with those which are. The judgment must be reversed and the cause remanded for a new trial. It is hoped that when such trial shall occur only the case made by the pleadings in view of the undisputed fact, that the potatoes were purchased under a written contract, will be tried and submitted to the jury; that all extraneous matters will be excluded. The contract must be held to determine the question as to the kind of potatoes which were bought. They were simply good potatoes. That doubtless called for potatoes of good merchantable quality,

and that called for at least ordinary keeping qualities. When it comes to a question of damages it should not be forgotten, as to general damages, that the true standard for breach of implied warranty, as in a case of this kind, is the difference between the market value of the property delivered at the time and place it was received and the market value at such time and place of property of the kind the contract called for. In addition such special damages as are properly claimed in the pleading, established by the evidence, and allowable by correct legal principles as herein outlined, may be recovered. Further, it must be borne in mind upon a second trial that it was not consistent with ordinary care for respondent to allow the potatoes to remain in the cellar in contact with good stock, with knowledge of all the facts, till all the potatoes became a mass of filthy worthless material.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.