WOJCIUK and wife, Plaintiffs and Appellants, v. UNITED STATES RUBBER COMPANY, Defendant and Respondent: STUEWER, Defendant and Respondent.*

*February 4—March 5, August 6, 1963.*

* Motion for rehearing granted, on April 30, 1963. For disposition on rehearing, see post, p. 235a.

227

228

For the appellants there was a brief by *Foley, Sammond & Lardner* and *John R. Collins,* all of Milwaukee, and oral argument by *Mr. Collins.*

For the respondents there was a brief by *Arnold, Murray & O'Neill* of Milwaukee, for Herbert Stuewer, and by *Wickham, Borgelt, Skogstad & Powell* of Milwaukee, for the United States Rubber Company and the Phillips Petroleum Company, and oral argument by *Kurt H. Frauen* and *James T. Murray,* both of Milwaukee.

FAIRCHILD, J. Two issues are presented on this appeal: (1) Did the trial court abuse its discretion in not allowing the plaintiffs' witness, Dr. Alfred Schmidt, to testify as an expert? (2) Did the trial court err in directing verdict in favor of the respective defendants?

1. *Did the trial court abuse its discretion in not allowing the plaintiffs' witness, Dr. Alfred Schmidt, to testify as an expert?*

"The question of whether a witness possesses sufficient knowledge to qualify as an expert is generally one for the trial court, and unless it appears that in its determination the court is guilty of an abuse of discretion, the court's ruling will stand." [2]

"The questions in that regard, however, relate to mere competency, and, therefore, the trial judge's determination thereof, within all reasonable limits is supreme." [3]

Dr. Schmidt is a mechanical engineer, employed by Marquette University as research professor of engineering.

---

[2] *Drott Tractor Co. v. Kehrein* (1957), 275 Wis. 320, 327, 81 N. W. (2d) 500, citing *Morrill v. Komasinski* (1950), 256 Wis. 417, 41 N. W. (2d) 620.

[3] *Northern Supply Co. v. Wangard* (1904), 123 Wis. 1, 16, 100 N. W. 1066, quoted in *Marsh Wood Products Co. v. Babcock & Wilcox Co.* (1932), 207 Wis. 209, 240 N. W. 392. See *Kreyer v. Farmers' Co-operative Lumber Co.* (1962), 18 Wis. (2d) 67, 80, 117 N. W. (2d) 646.

He worked for a number of years as a mechanical engineer, mainly with optical industries, and received graduate degrees of Master and Doctor of Science in engineering at the University of Michigan. He had taught at other universities and had been employed at Kearney & Trecker as research engineer in charge of metal cutting and as chief research engineer. He was asked what experience he had in observing the mechanics of automobile tires. He answered that early in life he had worked for an organization that sold tractors, trucks, and automobiles, and often examined tires which customers brought back, claiming defects; he had his own bicycle, motorcycle, and car. When he studied at the University of Michigan they went around to various automobile factories and saw their testing procedures. He had recently spent a week at the General Motors test center and spent one day observing demonstrations and tests of tires. He testified that while at Kearney & Trecker he had studied adhesives, including rubber, and the bonding of rubber to other materials in connection with fastening components of machinery together, or insulating precision parts of a machine from vibration.

The offer of proof included testimony that there was a separation of plies in the vicinity of one of the breaks, and that the separation was caused by incomplete bonding in the vulcanizing process; that friction between the separated plies caused more heat than normal and weakened the material; that the deflation of the tire was caused by sudden loss of most of the air pressure due to the holes in the sidewall; that the lack of bonding caused the structure to lose full strength, and this condition caused the holes.

The learned circuit judge acknowledged Dr. Schmidt's standing as a mechanical engineer but ruled that he was not qualified to testify as an expert in rubber. He said:

"The mere fact that he has worked with rubber pads in heavy machine equipment at Kearney & Trecker certainly doesn't qualify him to testify as to what caused an alleged

blowout or explosion of an automobile tire. His only affinity to tires is . . . owning a bicycle or being involved in the sale of automobiles where he examined the tires as to the amount of rubber left on them, and his trip over to General Motors."

Although the decision was based upon Dr. Schmidt's lack of experience with automobile tires, it was not based upon a supposed rule that practical experience is always an essential qualification of an expert witness. Such a rule would be erroneous.[4]

In this case plaintiffs were attempting to establish, from expert examination of the tire, that it had been defectively manufactured and that its failure resulted from such defect or at least had occurred in a manner which was a breach of alleged warranties. The ground which Dr. Schmidt's opinion was to cover was peculiar to the manufacture, structure, and behavior of rubber tires. We cannot say that it was an abuse of discretion to decide that Dr. Schmidt's knowledge of general scientific and mechanical engineering principles and his practical experience with materials and products other than tires did not qualify him to express opinions which would aid the jury in determining the facts of this case.

2. *Direction of a verdict.* The consideration of the propriety of directing a verdict can be readily divided into two parts: One relating to the causes of action for negligent manufacture and for breach of implied warranty, and the other relating to the causes of action for breach of express warranty and negligent representation.

*Negligent manufacture and breach of implied warranty.* In order to maintain their causes of action, plaintiffs must necessarily, in these circumstances, produce evidence that the failure of the tire resulted from a defect in its manufacture. Dr. Schmidt's opinion having been excluded, the

---

[4] *Bloch v. American Ins. Co.* (1907), 132 Wis. 150, 154, 112 N. W. 45.

record contained no such evidence unless the occurrence of the accident gave rise to a permissible inference of negligence.

Plaintiffs urge that an inference of negligent manufacture is permissible under the doctrine of *res ipsa loquitur*. Concededly the tire which failed had been out of the possession of the manufacturer for more than two weeks before the accident, but plaintiffs rely on three cases where the doctrine has been applied even though the article causing the injury was no longer in the exclusive control of defendant at the time it caused injury.[5]

In each of the situations considered in those decisions there was reason to say that there was much-greater probability that the defect causing injury existed when the article left defendant's possession than that it was created by subsequent occurrences. In *Weggeman v. Seven-Up Bottling Co., supra,* at page 514, we said:

"It is not essential that the possibility of other causes of the accident be altogether eliminated, but only that their likelihood be so reduced that the greater probability lies at defendant's door. The evidence must afford a rational basis for concluding that the cause of the accident was probably such that the defendant would be responsible for any negligence connected with it. 2 Harper and James, Law of Torts, p. 1086, sec. 19.7; Prosser, Law of Torts (2d ed.), p. 205, sec. 42."

In the case before us the tire had been on the car for two weeks and been driven 3,100 miles. The exposure of automobile tires to possible injury and abuse while being used is common knowledge. There was a cut through which air could have leaked, and there were marks and breaks

---

[5] *Ryan v. Zweck-Wollenberg Co.* (1954), 266 Wis. 630, 64 N. W. (2d) 226 (electric shock from sealed unit of a refrigerator); *Zarling v. La Salle Coca-Cola Bottling Co.* (1958), 2 Wis. (2d) 596, 87 N. W. (2d) 263; and *Weggeman v. Seven-Up Bottling Co.* (1958), 5 Wis. (2d) 503, 93 N. W. (2d) 467, 94 N. W. (2d) 645 (bursting bottles).

which indicated, according to Mr. Gray, that the tire had been used while not sufficiently inflated. As was said in *Ryan v. Zweck-Wollenberg Co., supra,* at page 639:

> "If the refrigerator were a machine or appliance, such as an automobile or sewing machine, the moving parts of which are capable of being operated by the user, defendant's point would be well taken. In case of injury resulting from the use of such a machine the inference would be just as strong that the defect causing the injury occurred as the result of the operator's use as would the inference that the same was due to some defect in manufacture, and therefore the principle of *res ipsa loquitur* would not be applicable."

*Breach of warranty and negligent representation.* The complaint against Phillips seems to have been drawn upon the theory that by advertising practices Phillips made itself legally responsible for oral representations made by dealers handling its products, including Stuewer. At the trial, upon a different theory, Phillips was shown to have advertised its tires as "new, safer Phillips 66 tires, which are guaranteed for life against any defects." Plaintiffs testified they read these advertisements. Assuming that the quoted statement was a warranty upon which plaintiffs could maintain an action, if breached, plaintiffs, in our opinion, did not succeed in establishing a breach. The lack of sufficient proof that the failure of the tire resulted from any defect has already been discussed.

The Wojciuks had conversed with Stuewer about the purchase of new tires. Wojciuk had originally been interested in buying Lee-brand tube-type tires. Mr. Stuewer had previously stocked Lee tires, but was then selling Phillips tires, and recommended them. He explained the difference between tubeless and tube-type tires, pointing out that lower air pressures were required in the tubeless type.

If a warranty or representation material to this case was made, it must be spelled out of the statements as follows, testified to by the Wojciuks although denied in

part by Stuewer: The low air pressure made the tubeless tire safer than the tube type. If anything punctured the tire on the road the air would not explode from the tire, but release slowly and allow a safe stop. The tire sealed itself to the rim and this was considered a safety factor. They are absolutely blowout proof because of the low pressure that is in the tire.

It would appear that most of what Stuewer said was intended as a comparison between tube-type and tubeless tires and to point out that the tubeless tire required less air pressure.

Nevertheless it is the rule that in deciding a defendant's motion for a directed verdict, the evidence must be regarded in the light most favorable to plaintiff.[6]

Although it is at least doubtful that there was a blowout of this tire in the ordinary meaning of the term, the evidence most favorable to plaintiffs does tend to show that the accident was precipitated by a sudden loss of whatever support the tire had been providing just before the accident and that the behavior of the tire did not completely fulfil the promises which Stuewer is claimed to have made.[7]

We conclude, however, that plaintiffs' claim of express warranty must fail in any event because they did not prove that they gave a notice of breach of warranty as required by sec. 121.49, Stats. The giving of notice was alleged in the complaint but denied in the answers. Mr. Wojciuk testified that he telephoned Stuewer the day of the accident and said: "Herb, what kind of tires did you sell me? . . . We had a blowout and a terrible accident resulted from it." Although there was testimony that Wojciuk later showed Stuewer the damaged tire and presumably had conversations with him, the conversation just referred to is the one

---

[6] *Gilson v. Drees Brothers,* post, p. 252, 120 N. W. (2d) 63.
[7] *Senter v. B. F. Goodrich Co.* (D. C. Colo. 1954), 127 Fed. Supp. 705.

which comes the closest to constituting notice of breach of warranty.

The notice requirement is not satisfied by informing the seller of the facts concerning the breach, but the notice must inform the seller, either expressly or by implication, of the buyer's claim that a breach exists and that the buyer will look to the seller for damages.[8] The conversation as described did not convey sufficient information to be a notice of breach of warranty although if it had contained the proper substance it was timely.

The evidence does not establish that Stuewer had either actual or apparent authority from Phillips to make the statements attributed to him. Moreover, the substance of any notice of breach of warranty to Phillips does not appear in the record.

With respect to the cause of action for negligent representation, the plaintiffs appear to be relying upon the rules for liability stated in Restatement, 2 Torts, pp. 1039, 1040, sec. 388, comment *b*. There is no evidence in the record tending to show that defendant Stuewer knew or should have known that the tire was dangerous for its obvious and intended use.

*By the Court.*—Judgment affirmed.

A motion for rehearing was granted April 30, 1963, confined to two questions, without oral argument.

Briefs on rehearing were filed for the appellants by *Foley, Sammond & Lardner* and *John R. Collins,* all of Milwaukee, and for the respondent Herbert Stuewer by *Arnold, Murray & O'Neill* of Milwaukee.

---

[8] *Mack Trucks, Inc., v. Sunde,* ante, p. 129, 119 N. W. (2d) 321. See *Kennedy-Ingalls Corp. v. Meissner* (1960), 11 Wis. (2d) 371, 384, 105 N. W. (2d) 748.

The following opinion was filed August 6, 1963:

PER CURIAM (*on rehearing*). The two questions on which rehearing was granted were as follows:

(1) Was notice of breach of warranty essential to plaintiffs' cause of action against Herbert Stuewer for breach of express warranty?

(2) Would the record sustain a finding that a proper notice of breach was given, if required?

1. *Necessity of notice.* The tires were sold and delivered in Wisconsin, where plaintiffs reside and ordinarily keep their car, albeit Stuewer was aware of plaintiffs' plan to travel outside the state. The injury occurred while plaintiffs were passing through Indiana. Plaintiffs concede that Wisconsin law is applicable to questions of scope and extent of the warranties, but contend that Indiana law controls as to the necessity of notice of breach of warranty.[1]

This action is founded upon an express warranty in connection with a sale, made and completed in Wisconsin, of an article intended to be principally used in Wisconsin. Although the damages were directly caused by an event in Indiana, we perceive no sound reason why the question whether notice must be given of breach of the Wisconsin warranty should be decided by the law of Indiana, simply because the injury occurred there.

Several courts have decided that in a personal-injury action against a seller on the ground of breach of warranty, liability is determined in accordance with the law of the place in which defendant sold the product.[2] It has been held,

---

[1] The supreme court of Indiana has decided that sec. 49, Uniform Sales Act, does not require prompt notice of breach of warranty where the claimed liability is for personal injury. *Wright-Bachman, Inc., v. Hodnett* (1956), 235 Ind. 307, 133 N. E. (2d) 713.

[2] Anno. 76 A. L. R. (2d) 130.

however, that the entire transaction from sale to injury should be considered and the law of the place "most closely associated with" the transaction should be applied.[3] In the present case, either rule would require application of Wisconsin law.

The late Judge GOODRICH endorsed the view that all matters connected with the performance of a contract are regulated by the law of the place where it is to be performed.[4] For various purposes, validity and interpretation, as well as breach, several different formulae are used for deciding which law will be applied, i.e., place of making, place of performance, intention of the parties, grouping of contacts.[5] Any of these formulae would require application of Wisconsin law to the present case.

It is true that the majority of courts have held that in products-liability actions founded on negligence, the law of the place of the wrong governs, and the place of the wrong is the place where the injury was sustained.[6] It is not easy to find a rational explanation why, when plaintiff's injury occurs in state A, and all other material facts, including the acts and omissions of defendant take place in state B, the law of state A will apply if the cause of action be based on negligence, but the law of state B, if based on breach of contract.[7] In any event, the present case is thoroughly grounded

---

[3] *Bowles v. Zimmer Mfg. Co.* (7th Cir. 1960), 277 Fed. (2d) 868, 874, 76 A. L. R. (2d) 120. See also Stumberg, Conflict of Laws (2d ed.), ch. 12, p. 405.

[4] Goodrich, Conflict of Laws (3d ed.), p. 342, sec. 114. See Stumberg, Conflict of Laws (2d ed.), ch. 8, p. 263.

[5] *Estate of Knippel* (1959), 7 Wis. (2d) 335, 96 N. W. (2d) 514.

[6] Anno. 76 A. L. R. (2d) 130.

[7] The Tentative Drafts of Restatement, Conflict of Laws (2d), indicate a tendency to resolve the choice in either case on the basis of the state with which the contract or occurrence has its most "significant relationship." Tentative Draft No. 6, Contracts, pp. 6 and 83, secs. 332 and 346c; Tentative Draft 8, Wrongs, p. 3, sec.

in contract, and it seems clear that the consequences of failure to give notice of breach are so closely related to the rights arising out of the contract of sale, that both should be governed by the same law.

We conclude that the law of Wisconsin governs the necessity of prompt notice of breach.

This court has not addressed the question whether a plaintiff seeking to recover damages for personal injury arising out of a breach of warranty is bound by sec. 121.49, Stats. (sec. 49, Uniform Sales Act, 1A U. L. A., p. 99), to give the seller timely notice of breach.[8] Most courts hold that plaintiff is bound by sec. 49.[9]

The majority rule has been subjected to criticism. Learned authors have suggested that although the notice requirement is a sound rule of commerce, and by requiring prompt assertion of claims, protects sellers from claims which arise from afterthought, the injured consumer is often unfamiliar with business usage and is more likely, because of ignorance, to delay the assertion of an otherwise valid claim.[10]

379. See also Ehrenzweig, Products Liability in the Conflict of Laws—Toward a Theory of Enterprise Liability Under Foreseeable and Insurable Laws, 69 Yale Law Journal (1960), 794, 800, for the suggestion that in products-liability cases, plaintiff should be able to choose the law most favorable to him among all the states having some contact with the case.

[8] The decision of this court in *Marsh Wood Products Co. v. Babcock & Wilcox Co.* (1932), 207 Wis. 209, 240 N. W. 392, is sometimes cited for the rule that notice of breach is necessary where plaintiff seeks damages for personal injuries. In that case, however, there were several plaintiffs. The warranty cause of action was for property damage, and the personal-injury actions were based on negligence.

[9] 2 Harper and James, Law of Torts, p. 1574, sec. 28.17; James, Products Liability, 34 Texas Law Review (1955), 192, 197; Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale Law Journal (1960), 1099, 1130.

[10] James, Products Liability, *supra,* footnote 9; Prosser, The Assault Upon the Citadel, *supra,* footnote 9.

The intermediate appellate courts of New York have held notice of breach unnecessary in personal-injury actions based on breach of warranty.[11]

It seems to us, however, that these authorities are expressing dissatisfaction with the statute, rather than a choice between reasonable interpretations of its provisions.

The supreme court of Indiana has held notice of breach unnecessary in such cases.[12] This holding was based upon an interpretation of sec. 70, Uniform Sales Act, 1A U. L. A., p. 406, providing that nothing in the act shall affect the right of the buyer or seller to recover interest or special damages where by law interest or special damages may be recoverable. The court concluded that since such damages could have been recovered without notice before the act, sec. 70 exempted liability for personal injuries from the notice requirement in sec. 49. We consider, however, that the purpose of sec. 70 is to make it clear that under the Sales Act liability arising out of breach of warranty may extend to interest and special damages, even though the remedy provisions of the act do not mention either, and that it was not the purpose of sec. 70 to exempt such elements from the part of sec. 49 which provides that upon buyer's failure to give timely notice of breach, "the seller shall not be liable therefor."

We are aware of the view that the law of warranty is a somewhat-awkward instrument with which to determine when to impose strict liability to consumers for personal injuries arising out of insufficiencies of a commercial product for its intended use, or failure to fulfil advertised representations.[13] We have previously mentioned the criticism

[11] *Kennedy v. F. W. Woolworth Co.* (1923), 200 N. Y. Supp 121, 205 App. Div. 648; *Silverstein v. R. H. Macy & Co., Inc.* (1943), 266 App. Div. 5, 40 N. Y. Supp. (2d) 916.

[12] *Wright-Bachman, Inc., v. Hodnett, supra,* footnote 1.

[13] James, Products Liability, *supra,* footnote 9; Prosser, The Assault Upon the Citadel, *supra,* footnote 9.

of the notice requirement as applied to claims for personal injury.

A valid argument can be made, however, that it is important to guard against personal-injury claims which are generated by afterthought as to warranties made, and that a person who honestly feels that his injury was caused by a breach of warranty is very likely to assert his claim promptly. There is no such absurdity in applying the notice requirement to personal-injury claims to warrant reading them out of the statute.

Although we find no basis in the statute for an exception of personal-injury claims from the notice requirement of sec. 49, that section does permit some liberality in terms of content and timeliness of notice where a personal-injury claimant is involved and the interest of justice so requires.

"Although most courts require notice, they have been liberal on the whole in passing upon the adequacy of notice and the question of reasonable time. It need not take any particular form, or be a claim for damages, or be in writing. But it '. . . must refer to particular sales, must fairly advise the seller of the alleged defect; and specify with reasonable particularity in what the breach consists [and] is sufficient if it is reasonably inferable therefrom that the buyer is asserting a violation of his legal rights.' " [14]

2. *Sufficiency of telephone conversation as notice.* We have reconsidered the record in the light of the policy considerations in support of greater liberality in personal-injury actions in determining whether a particular communication to the seller is sufficient as a notice of breach under sec. 121.49, Stats. Taking the testimony most favorable to plaintiffs, we conclude that a jury could reasonably infer that Wojciuk was asserting, in his telephone conversation, a violation of plaintiffs' legal rights arising out of their purchase of a tire.

[14] 2 Harper and James, Law of Torts, *supra*, p. 1575, footnote 9, and cases cited therein.

It is true that Wojciuk made no demand for damages nor statement that he would hold Stuewer accountable. Had the same words been said in a casual conversation, the case might be different, but here the circumstances are of substantial importance. The call was made the same day as the accident, while the Wojciuks were several hundred miles from Milwaukee. The record suggests no reason for Wojciuk to call Stuewer unless he felt that Stuewer had some obligation because of the tire failure.

In our original decision we held that as a matter of law the conversation could not suffice as notice of breach. Upon reconsideration we now hold that its sufficiency as notice of breach would, under the evidence, present a jury question.

3. *Costs.* Plaintiffs have now, on rehearing, obtained a new trial of their cause of action against Stuewer for breach of express warranty. To that extent they have prevailed against him and are entitled to costs. They have not, however, prevailed against the other defendants. On both sides, the cases were briefed and presented together, so that a proper award of costs must reflect a discretionary division. We deem it fair that plaintiffs be allowed to tax against defendant Stuewer one half of their total costs taxable on the appeal prior to rehearing and their full costs taxable on rehearing. The defendants other than Stuewer were not involved in the motion for rehearing and may tax against plaintiffs their full costs on the appeal prior to the rehearing.

It is ordered that the mandate entered March 5, 1963, be modified to read:

Insofar as the judgment dismissed plaintiffs' cause of action against defendant Stuewer and awarded him costs, the judgment is reversed, and cause remanded for a new trial. In all other respects the judgment is affirmed. Costs are to be taxed as stated in the memorandum on rehearing.