Bloch, Respondent, vs. American Insurance Company and others, Appellants.

*May 2—May 21, 1907.*

*Appeal: Review of findings by jury: Evidence: Competency of expert: Exhibiting goods to show quality: Wife as witness for husband: Agency: Special verdict: Informing jury of effect of answers: Instructions: Fire insurance: Permitting additional insurance: Restrictions as to amount and validity: Construction of statutes.*

1. Findings of fact in a special verdict based upon conflicting evidence will not be revised or reversed on appeal.
2. In an action upon fire insurance policies, to rebut possible inferences from testimony as to an explosion and the subsequent finding of a can of the kind used for gasoline, burned but intact, in the basement of the building, plaintiff offered as an expert

witness a graduate pharmacist who stated that he had acquired "knowledge of explosives and their action," and that he had knowledge from his own experience of the action of gasoline and sugar as explosives. *Held*, that this established *prima facie* some degree of qualification and, defendant having failed to show by cross-examination that he lacked competency, the witness was properly permitted to give opinion evidence on the subject.

3. In such action it was not prejudicial error to allow a witness, in rebuttal of defendant's evidence that the merchandise destroyed was cheap and inferior, to exhibit, in connection with her testimony to the effect that the articles purchased out of the plaintiff's stock were of good quality, the articles themselves.

4. The wife of a merchant who was shown to have exercised a very general agency for him in the management of his store prior to the transactions in question was competent to testify on his behalf to transactions by her as his agent, the whole or some part of which took place in his presence.

5. Instructions to the jury, in which, among other things, the trial court stated certain claims of the respective parties, are *held* not to have been erroneous or improper on the ground that they informed the jury of the effect of their answers to questions of the special verdict.

6. In an action upon fire insurance policies, where a question of the special verdict asked whether plaintiff knowingly swore falsely as to either of several matters, there was no prejudicial error in charging the jury: "You will notice there are a number of things embraced in this question, and if you find that he did knowingly swear falsely to any one of them, then you will answer the question in the affirmative; but, if you are not satisfied as to any one of them, then your answer will be in the negative."

7. The provision in the Wisconsin standard policy that it shall be void in case the insured has or shall procure other insurance unless it is otherwise provided by agreement indorsed on the policy or added thereto—sec. 1941—46, Stats. (1898)—authorizes an agreement specifying or limiting the amount of additional insurance permitted, and gives the right to contract with respect to the extent to which additional insurance shall be valid.

8. An agreement attached to a policy, permitting additional insurance under certain restrictions and conditions as to the amount and validity thereof, cannot be held valid as to the consent and void as to the conditions thereof.

9. Sec. 1943a, Stats. (1898)—prohibiting the issuance of any policy containing any provision limiting the amount to be paid in case of loss below the actual cash value of the property, if within the amount of the insurance for which premium is paid, etc.—applies only to cases in which the insurer attempts by stipulation in the policy, or with the policy, without consent of the insurer and without reduction of premium, to limit its liability thereon below the amount or face of the policy upon which or for which the insured has paid full premium, and where the value of the goods destroyed is within the amount of such insurance carried on the property. It does not prohibit permission for additional insurance, nor restriction of the amount thereof, nor waiver of the invalidity of the additional insurance in whole or in part. An agreement, therefore, attached to a policy, made at the option of the assured and in consideration of a reduced rate of premium, permitting other insurance to an amount not exceeding seventy-five per cent. of the actual cash value of the property, and providing that if at the time of the fire the total insurance should exceed such per cent. the policy should be void only in proportion of such excess to such total insurance, was valid.

10. A statute as originally enacted may be resorted to in aid of the construction of it as afterwards embodied in a revision, and it is to be presumed that the revisers intended no substantial change in the law unless otherwise expressed.

APPEALS from judgments of the circuit court for Marinette county: S. D. HASTINGS, Circuit Judge. *Modified and affirmed.*

Seven appeals, each from a separate judgment of the circuit court for Marinette county, entered in a consolidated action of the respondent against the appellants upon policies of fire insurance. There was a special verdict finding that the fire which on January 30, 1905, destroyed plaintiff's property at Wausaukee was not set by or at the instigation of the plaintiff; that the plaintiff had no fireworks in his store and no gasoline other than that in his lamp, and that he neither knowingly swore falsely nor fraudulently concealed or misrepresented concerning his loss; and that the actual cash value of the stock of merchandise destroyed by the fire was $11,799.18. The plaintiff had on his property destroyed by

fire policies of insurance as follows: In the *American Insurance Company*, dated September 14, 1904, for $1,000; *Anchor Fire Insurance Company*, dated January 26, 1905, for $500; *British American Assurance Company*, dated September 20, 1904, for $2,000; *Camden Fire Insurance Association*, dated September 14, 1904, for $1,000; *Fire Association of Philadelphia*, dated May 12, 1904, for $2,000; *Germania Fire Insurance Company*, dated April 9, 1904, for $1,500; *Home Insurance Company*, dated May 12, 1904, for $2,000—total $10,000. Each of these policies was in the Wisconsin standard form, was in force when the fire occurred, and had an agreement attached thereunto and part thereof in the following words:

"Reduced Rate Three-fourths Limitation Clause.

"At the option of the assured, and in consideration of the reduced rate of premium charged for this policy, permission is hereby granted for other insurance to an amount, including this policy, aggregating not to exceed seventy-five (75) per cent. of the actual cash value of the property; provided, however, that if at the time of the fire the total insurance on the property shall exceed said seventy-five (75) per cent., this policy shall thereby become void only in proportion of such excess to such total insurance.

"When this clause is attached to and made part of a policy covering two or more items, this clause shall be construed as applying separately to each item of this policy.

"This form is attached to and made a part of policy No. ———— of the ———— Insurance Company of ————."

For the appellants there was a brief by *Eastman & Martineau*, attorneys, and *William D. Van Dyke*, of counsel, and oral argument by *Mr. P. A. Martineau* and *Mr. Van Dyke*.

*W. B. Quinlan*, for the respondent.

TIMLIN, J. The appellants raise by proper objection, exception, and assignment of error in their brief the question whether the trial court should not have set aside the answers of the jury to those questions of the special verdict finding

that the insured did not keep fireworks in his stock; or keep in his premises gasoline; knowingly swear falsely in his proofs of loss; or. fraudulently conceal from or misrepresent to the insurers. We have examined the evidence and the rulings of the circuit court in these particulars and are convinced that these assignments of error raise pure questions of fact passed upon by the jury and by the court below and found adversely to the appellants upon conflicting evidence, and therefore we have no right to revise or reverse such findings.

The same is true of the eighth finding, fixing the value of the goods destroyed.

Certain witnesses having testified that their attention was first attracted to the fire by a loud explosion, and certain others having found after the fire in the basement, burned but intact, a five-gallon can of the kind ordinarily used for gasoline, the plaintiff, to rebut the possible inferences which the jury might draw from these facts, offered as an expert witness one Luckenbach, who testified that he was a graduate pharmacist and had acquired "the knowledge of explosives and their action and the laws that operate on them." In answer to a direct question by the court he stated that he had knowledge from his own experience of the action of gasoline and of sugar as explosives. Upon this preliminary showing of qualifications as an expert he was allowed to give opinion evidence. While erudition or experience in pharmacy does not appear to us to peculiarly qualify one to testify as an expert on explosives, yet the witness testified that he had actual knowledge on this subject from his own experience. This established *prima facie* some degree of qualification, and then it was for the party objecting to his competency as an expert to show by cross-examination, either preliminary or final, that he lacked competency. Not having done this, and the subject of explosives having a practical as well as a scientific aspect, we must hold that, considering the collateral nature of the

question to which his testimony was directed, it was not error to permit him to give his opinion.

Nor was it prejudicial error to permit the witness Hannah Dunn, in rebuttal of defendants' evidence that the goods carried by plaintiff in stock were cheap and inferior, to bring with her and exhibit, in connection with her testimony to the effect that the articles purchased by her out of plaintiff's stock were of good quality, the articles themselves.

The evidence seems to establish that the plaintiff's wife exercised a very general agency for him in the management of his store, in taking inventories, ordering, purchasing, and selling goods, and within such agency, and in relation to business matters which she transacted as agent for her husband, she was a competent witness notwithstanding her husband was plaintiff. No ruling of the learned circuit judge has been called to our attention which transgressed the rules of law relative to the admission of such evidence. If the agency of the wife is very general and the transactions in which she acted for her husband numerous, her competent evidence must have a corresponding scope. The agency must have been real, not pretended, and, if it exist prior to transactions in her husband's presence and is not solely sought to be established by such transactions, we see no reason why she should not be competent to testify to transactions by her as his agent, the whole or some part of which took place in her husband's presence. *Menk v. Steinfort,* 39 Wis. 370.

The appellants next contend that within the rule of *Van de Bogart v. Marinette & M. P. Co.* 127 Wis. 104, 106 N. W. 805; *Musbach v. Wis. C. Co.* 108 Wis. 57, 84 N. W. 36, and *Lyon v. Grand Rapids,* 121 Wis. 609, 99 N. W. 311, the trial court erred in its instructions to the jury in that he "repeatedly told the jury what each party claimed with reference to the question discussed and gave such other instructions as to necessarily inform the jury of the effect of their answers

upon the rights of the parties." Illustrations are offered in appellants' brief as follows:

"Discussing the first question, as to whether or not the plaintiff caused the fire to be set, [the court] said: 'It is claimed by the defendants that he did—that he denies.' " Also: "Now there is no positive testimony. No witness swears that they saw *Mr. Bloch* set fire to this building, and there is no claim that anybody did see him, but the defendants claim that the facts and circumstances established in the case are such as to warrant the jury in believing that he did do it." Also: "While this charge is a criminal charge in its nature, something for which *Bloch* might be criminally responsible, if it were true;" and, further, that in this case it is not required to be proven beyond reasonable doubt, etc. Also: "Now the testimony in support of the contention of the defendants that he did have [fireworks] is that of the party from whom the fireworks were bought." Also: "By the terms of his policy the plaintiff is obliged to be fair and square with the insurance companies who insured him, and to conceal nothing and to disclose everything which would tend to throw light upon the extent and amount of his loss and injury and damage, and, if he purposely and intentionally either misstated anything or concealed anything that honest dealing or good faith between the parties would require him to reveal, then he is guilty of the fraud and misrepresentation that is referred to in this question, and it should be answered in the affirmative."

Counsel for appellants say of the foregoing: "This plainly told the jury what the contract of the parties was. . . . This language is very much more objectionable than the language criticised in the *Van de Bogart Case,*" 127 Wis. 104, 106 N. W. 805. For the same reasons the following portion of the charge on the subject of damages is criticised:

"Now, as to the figures on this question, I think Mr. Quinlan misstated the exact amount that they claim a little. The proofs of loss as I have it here, and I think they are all alike, claims $13,108.31. I do not recall now that in any figures made by the defendants' counsel they have figured out any exact amount which they claim should be the maximum amount that the jury could find."

The point that the court erred in each of the foregoing particulars by informing the jury of the effect of the answers to the question of the special verdict under consideration is properly raised by due exception and assignment of error, and we are required to pass thereon, and do so by determining that the quoted portions of the charge are not erroneous or improper.

The instructions of the trial court on the sixth question of the special verdict are also brought before us for review. They were:

"Now the sixth question: Did the plaintiff, either in his proofs of loss or when examined under oath by the representatives of the defendants, knowingly swear falsely concerning the quantity or value of goods destroyed by said fire, or the presence of fireworks or gasoline in his store, or the origin of said fire, or the manner in which he ascertained the quantity or value of the goods destroyed by said fire? You will notice that there are a number of things embraced in this question, and, if you find that he did knowingly wilfully swear falsely in regard to any one of them, then you will answer the question in the affirmative; but if you are not satisfied as to any one of them, then your answer will be in the negative."

This affords a happy illustration of how a sentence or expression, detached from its context relations and deprived of the aids to its meaning afforded even by the form of precedent expression in the same discourse or writing relating to the same subject, may convey an entirely different idea from that intended by the speaker or writer. Using the word "satisfied" as a synonym for "convinced," if we say to a person, with reference to a series of logically independent propositions, "If you are not satisfied as to any one of them your answer [to all] will be in the negative," the error would appear to be incontrovertible. But where a series of logically independent propositions, an affirmative answer to either of which is the same in legal effect as an affirmative answer to all, are

laid before a jury, and the jury are told, "You will notice that there are a number of things embraced in this question, and, if you find that he did knowingly wilfully swear falsely in regard to any one of them, then you will answer the question in the affirmative; but if you are not satisfied as to any one of them, your answer will be in the negative," the idea conveyed is different. The antithetic nature of the sentence changes the meaning of the last clause, and the idea the whole sentence conveys is that conviction of the truth of either proposition of the series requires an affirmative answer to the question, while the opposite, the antithesis, requires a negative answer. It is also by reason of the preceding specification ordinarily understood by the hearer without ellipsis, as if the speaker said, "But if you are not satisfied that he did knowingly wilfully swear falsely in regard to any (i. e. "some," "either") one of them, your answer will be in the negative." There was no prejudicial error in this part of the charge.

The appellants by proper objection and exception in opposition to plaintiff's motion for judgment raised the question whether the plaintiff's recovery should be for $10,000, the face of the policies of insurance, or seventy-five per cent. of $11,799.18, found by the jury to be the value of the property destroyed. The circuit court held valid the consent to additional insurance quoted in the statement of facts preceding this opinion, but invalid the limitation thereof to seventy-five per cent. of the actual cash value of the property destroyed, and gave judgment accordingly. The statutes upon which this decision was based are sec. 1943a, Stats. (1898), which reads:

"No fire insurance company doing business in this state shall issue any policy containing any provision limiting the amount to be paid in case of loss below the actual cash value of the property, if within the amount of the insurance for which premium is paid, and no such company shall require the use of any so-called co-insurance clause or rider to be attached or made a part of any policy except at the option of

the insured, and every such company shall give to every applicant for insurance the rate of premium demanded with and without such clause or rider. The commissioner of insurance, upon evidence furnished to him that any such company has failed when requested to furnish any applicant for insurance such separate rates, shall forthwith revoke the license of said company and all its agents. If any company which violates any provision of this section is incorporated under the laws of this state such violation shall be cause for forfeiting its charter, and the attorney general shall institute proceedings to have such forfeiture declared."

Secs. 1941—43 to 1941—64 prescribe the form of fire insurance policy to be used and forbid the use of any other or different policy of fire insurance with certain exceptions. One of these exceptions is:

"Printed or written forms of description and specification or schedules of the property covered by any particular policy and any other matter necessary to clearly express all the facts and conditions of insurance on any particular risk (which facts or conditions shall in no case be inconsistent with or a waiver of any of the provisions or conditions of the standard policy herein provided for)."

In the form so provided we find among the many "provisions, agreements, and conditions" therein contained the following, namely: The insurer insures for a specified term the other party to the contract against all direct loss or damage by fire. The entire policy is to be void if the insured then has or shall thereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by the policy, unless it is otherwise provided by agreement indorsed on the policy or added thereunto. This permits an agreement to be added to the standard form of policy permitting other insurance, and providing that such other insurance shall not invalidate the policy. It includes within its scope the right to specify or limit the amount of additional insurance so permitted, because the authority to make such contract or modification of the terms of the stand-

ard policy with reference to additional insurance is not limited in this respect by restrictive words. It includes the right to contract with respect to the validity of additional insurance. For the same reason this includes the power to contract as to what extent it shall be valid. If a specific amount of additional insurance is merely permitted thereby and the insured should exceed this amount, the consequence would be, under this form of contract, that all the insurance would be invalid. A distinction must be made between policies of insurance covering fixed definite property in existence and ascertained at the time the insurance is written and policies covering a constantly changing stock of goods, where no part of the property destroyed by fire may have been in the possession or ownership of the insured at the time when the insurance was written. Under policies of this latter class, sometimes called "floating policies" or "shifting risks," the property insured is the property of a class and kind described, in the place described, which the insured may have on hand at the time of the fire, whether it is or is not identical in items with that which he had on hand at the time that the insurance was written. With respect to this class of insurance it would be difficult, if not impossible, to frame a provision for additional insurance naming a fixed and definite sum which would afford the insured any protection by reason of his insurance policies against a condition where fire occurred at a time when his stock might be depleted by sales to an amount which would leave the outstanding insurance in excess of the permitted insurance on that value of stock. This condition and the provisions of the standard policy law must be considered in the construction of sec. 1943a, *supra.* The words "actual cash value of the property," found in sec. 1943a, *supra,* refer to the property destroyed. Sec. 1943a, if taken literally, might, when the amount of the loss is less than the face of the policies, prohibit any provision in an insurance policy forfeiting the policy, because a clause in the policy providing that in

certain events the insurance company should pay nothing in case of loss would be "limiting the amount to be paid in case of loss below the actual cash value of the property." But manifestly this was not the legislative intention or the forfeitures found in the standard policy form would not have been authorized by statute. Sec. 1943a, if taken literally, would also have no application to the case at bar or any other case of loss under fire insurance policies where the amount of loss was not within, but exceeded, the amount of the insurance for which premium was paid.

In *Newton v. Theresa V. Mut. F. Ins. Co.* 125 Wis. 289, 104 N. W. 107, where the loss was less than the amount of insurance and consequently the precise questions arising in the instant case were not before the court, it was said relative to insurance on the stock of goods:

"The words 'cash value of the property' evidently refer to the property destroyed, not to the property insured. Supplying the missing word, the provision simply means that if the total cash value of the property destroyed is less than the total insurance, as in this case it was, no provision attached to the policy shall be effective to reduce the amount to be paid by the insurance companies to a sum less than that cash value."

While it cannot be said that this determines the proper construction of sec. 1943a as applied to the case at bar, where the amount of loss exceeded the insurance, yet it does by construction and within the words of sec. 1943a limit the application of that part of this section to cases of loss under insurance policies where the actual cash value of the property destroyed is within the amount of the insurance for which premium is paid.

The construction given to sec. 1943a by the learned circuit court, whereby the appellants are held bound by all parts of the contract quoted relative to additional insurance except that provision stating that the policy "shall thereby become void only in proportion of such excess to such total insur-

ance," cannot be correct, because it enforces upon the appellants liability upon a contract to which they never assented, one upon which the minds of the parties never met. Not even a statute can do this. We must hold that the consent to additional insurance was wholly void or that it was wholly valid. It does not seem to us to be separable from the conditions placed therein by agreement of the parties. Sec. 1943a first appeared as ch. 343, Laws of 1897. It was entitled "An act to prevent unjust discrimination by fire insurance companies in the use of co-insurance clauses or riders." This is some indication that it was intended to be applicable to co-insurance stipulations, which are well understood to mean agreements by which the insured is to carry some fractional part or percentage of his own insurance and thus become with the insurance company a co-insurer, and not to mean additional insurance in other insurance companies. The act purported to prohibit an agreement limiting the amount to be paid in case of loss below the actual cash value of the property if such actual cash value was within the amount of the insurance for which premium was paid. This part of the agreement was designated a "provision." The act then proceeded:

"Except that no such company shall require the use of any so-called co-insurance clauses or riders to be attached or made part of any policy of insurance except at the option of the assured, and every such insurance company shall give to every applicant for insurance the rate of premium demanded with and without such clauses, riders or provisions."

These last words seem to us to include the "provision" limiting the amount, mentioned in the first part of the sentence, as well as the "clauses or riders" mentioned later in the same sentence. On penalty of revocation of its license the insurance company is required to furnish any applicant for insurance when requested such separate rates. What separate rates? Reading the law from sec. 1943a, it would ap-

pear to be the separate rates with and without the co-insurance clause or rider, but, reading the original law (ch. 343, Laws of 1897), it would appear to be the separate rates with and without provisions limiting the amount to be paid in case of loss when the loss is within the amount of insurance, as well as with and without co-insurance clauses and riders. Reading it this way would also give effect to the words, "the amount of the insurance for which premium is paid," as meaning something more than "the amount of the insurance." It would also require or permit us, in harmony with the standard policy law, to construe the exception in these words, "except at the option of the assured," to apply to all the precedent parts of the same sentence. The whole original act thus viewed would relate only to stipulations in the nature of co-insurance clauses and stipulations to which the assured might give consent. Reading it in this way it would include any stipulation relating to the payment of only part of an ascertained loss, although the insurance on which premiums at the full rate were paid was greater than the loss. This is not strictly a co-insurance clause, but it appears to be forbidden in the case mentioned and to be classed as a co-insurance clause in the title of the act. When this statute was carried by the revisers into sec. 1943a, the words "except that" in the first exception of the first sentence were omitted and the word "and" substituted, and the word "provisions" was omitted from that part of the first sentence requiring the insurance company to give every applicant for insurance the rate of premium demanded with and without such clauses, riders, or provisions, and the words "clauses" or "riders" were changed from plural to singular. Nevertheless the act as originally passed may be resorted to in aid of the construction of the revised law, and it is to be presumed that the revisers intended no substantial change in the law unless otherwise expressed. *State ex rel. Rochester v. Racine Co.* 70 Wis. 543, 36 N. W. 399. It must also be construed with reference

to the standard policy law relating to the same subject. *Storm v. Cotzhausen,* 38 Wis. 139. The title and preamble of the act may be considered if the meaning of the act is doubtful (*Nazro v. Merchants' Mut. Ins. Co.* 14 Wis. 295; *Mundt v. S. & F. R. Co.* 31 Wis. 451), at least for the purpose of discovering the scope and purpose of the statute from the mischiefs which are to be remedied and the objects to be accomplished by its provisions. *Pulis v. Dearing,* 7 Wis. 221.

Upon the foregoing considerations we determine the true construction of sec. 1943a. It is to have application only to cases in which the insurer attempts by stipulation in the policy, or with the policy, without consent of the insured and without reduction of premium, to limit its liability thereon below the amount or face of the policy upon which or for which the insured has paid full premium, and where the value of the goods destroyed is within the amount of such insurance carried on the property. It is not to be taken to conflict with the true interpretation of the standard policy law, nor to prohibit permission for additional insurance, nor restriction of the amount of such additional insurance, nor waiver of the invalidity of the additional insurance in whole or in part, such agreements not falling within its terms as here construed. The agreement in question purports on its face to have been made at the option of the assured and in consideration of a reduced rate of premium, and is otherwise within the fair scope of the standard policy law, and not in conflict with sec. 1943a as herein interpreted, hence valid and binding.

It follows that the judgments appealed from must be modified by reducing the damages awarded by each judgment to its proper proportion of seventy-five per centum of $11,799.18 and in all other respects affirmed, and that the appellants recover one bill of costs on this appeal.

*By the Court.*—Judgments modified in accordance with this opinion, and as so modified affirmed.