State ex rel. McManman v. Thomas, 150 Wis. 190.

---

STATE EX REL. McMANMAN and others, Appellants, vs. THOMAS and others, Respondents.

*May 14—June 4, 1912.*

*Statutes: Construction: Conflicts: Title: Villages: Election of trustees.*

1. Conflicts between different statutes will not be held to exist if avoidable by reasonable construction.
2. Titles of acts may be resorted to in cases of doubtful construction.
3. Ch. 329, Laws of 1901, entitled "An act to amend village charters, and providing for the election of trustees," applies only to villages incorporated under special charters, not to those incorporated under the general charter law.

4. Although, under ch. 11, Laws of 1911, the trustees elected in that year in a village incorporated under the general law should have been divided into two classes as therein provided, failure to so divide them was a mere irregularity not invalidating the election, and all trustees then elected were entitled to hold office for at least one year.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

Action of *quo warranto* to oust the defendants from the offices of trustees of the village of Kilbourn. It appears that Kilbourn was during all of the times involved in this controversy, and still is, a municipal corporation incorporated under ch. 40 of the Statutes, and the board of trustees of such village consists of a president and six trustees. In the year 1902, and prior thereto, the notice of the annual election of said village provided for the election of six trustees without specifying any length of term of office. In 1903 the notice of election provided for the election of six trustees, one half to be elected for a term of one year and one half for a term of two years. For the years 1904, 1905, 1906, 1907, 1908, and 1909 the notices of election provided for the election of three trustees for a term of two years. For the year 1910 the notice of election provided for the election of three trustees without fixing the length of term of office. The notice of election held in April, 1911, provided for the election of six trustees without fixing any length of term of office. At the election held in April, 1909, the relator *C. H. Barrett* and Harry Van Alstine and Herbert Bauer were elected trustees and duly qualified as such. At the election held in April, 1910, the relators *Frank McManman, Adam Hile,* and *M. H. Evans* were elected trustees and duly qualified as such. At the election held in April, 1911, the defendants *Fred Thomas, E. H. Inglehart, Harry Snider, Henry Tofson, Austin Stowers,* and *William Blatchley* received the largest number of votes cast and were declared electel trus-

192    SUPREME COURT OF WISCONSIN.    [June

State ex rel. McManman v. Thomas, 150 Wis. 190.

tees for a term of one year. Subsequent to the election held
in April, 1911, the relators *Frank McManman, C. H. Bar-
rett, M. H. Evans,* and *Adam Hile* claimed to hold the offices
of trustees of said village, and they appointed the relator
*Arthur D. Finegan* trustee in the place of Harry Van Al-
stine, who had tendered his resignation as trustee to the said
relators. Herbert Bauer also resigned as trustee, but no one
was appointed to fill the vacancy.

The court found the above, among other facts, and as con-
clusions of law held (1) that ch. 329 of the Laws of 1901
had no application to the village of Kilbourn, but applied to
villages incorporated under special charters only; (2) that
while the election held in April, 1911, was not in accordance
with the provisions of ch. 11, Laws of 1911, yet it was com-
petent for the legislature to validate that election, and that
by the passage of ch. 168 of the Laws of 1911 it did so
validate it; (3) that the three trustees elected at the April
election held in said village in 1910 were elected for a term
of one year only; (4) that at the election held in April, 1911,
the defendants were elected for a term of one year; and
(5 and 6) that the defendants are the *de jure* board of trustees
of the village of Kilbourn and had been such since the time
they qualified for such offices, and are entitled to judgment
that they have not intruded or usurped the offices of the trus-
tees of the village of Kilbourn.

From a judgment entered accordingly the relators ap-
pealed.

For the appellants there were briefs by *Daniel H. Grady,*
and oral argument by *Mr. Grady* and *Mr. W. H. Farns-
worth.*

For the respondents there was a brief signed by *James F.
Dougherty,* village attorney, and oral argument by *Mr. W.
S. Stroud* and *Mr. Dougherty.*

VINJE, J.    The relators contend that the three trustees elected at the election in 1910 were elected for a term of two years, and therefore their term of office did not expire until 1912.    They also contend that at the election in 1911 only three trustees were to be elected, and that, inasmuch as six trustees were in fact elected, the election was absolutely void under the rule announced in *Att'y Gen. ex rel. Carpenter v. Ely,* 4 Wis. 420, and *State ex rel. Holden v. Tierney,* 23 Wis. 430; hence, no valid election having been held in 1911, the three trustees elected in 1909 held over, and, together with the three trustees elected for a term of two years in 1910, constituted the legal board of trustees.

· The defendants' claim is that the trustees elected in 1910 and 1911 were elected for a term of one year only; that there were therefore six trustees to be elected at the election of 1911, and the defendants, having received the largest number of votes cast at that election and having been duly declared to be elected trustees, were legally elected, and constituted the legal board of trustees of said village of Kilbourn.

Whether the contention of the relators or that of the defendants is correct primarily depends upon whether or not ch. 329, Laws of 1901, applies to villages incorporated under the general charter law or only to villages incorporated under special charters, as found by the trial court.    The chapter is entitled "An act to amend village charters, and providing for the election of trustees."    Sec. 1 thereof provides:

"Villages that have a president and four or more trustees shall elect them as follows: The president shall be elected annually.    On the first Tuesday in April, 1902, one half of the trustees shall be elected for a term of one year and one half of the trustees shall be elected for a term of two years and each year thereafter one half of the trustees shall be elected for a term of two years; provided that in villages

having an odd number of trustees, the village board shall by ordinance determine the number to be elected in 1902 for a term of one year and the number to be elected for a term of two years, which number shall be one half the number of said body as near as may be. Annually thereafter the trustees of said villages shall be elected for two years, except elections to fill vacancies, which shall be for the unexpired term."

If this law applies to villages incorporated under the general charter provisions, then it applies to all such villages, for sec. 875, Stats. (1898) (a section of the general charter law), provides for a president and six trustees for all villages incorporated thereunder. The language of the act is broad enough to apply to villages incorporated under the general charter law. But we think it is apparent from the title of the act, as well as from subsequent legislation, that it was intended to apply only to villages incorporated under special charters. The title is, "An act to amend village charters." No reference is made to any sections of the general charter law which it is claimed to amend or repeal. Every act to which our attention has been called which in any wise amends, modifies, or repeals any portion of the general charter law refers in its title to the sections of the general statutes affected. Titles of acts may be resorted to in cases of doubtful construction. *Nazro v. Merchants' Mut. Ins. Co.* 14 Wis. 295; *Mundt v. S. & F. du L. R. Co.* 31 Wis. 451. That this act applies to villages incorporated under special charters is apparent from the language in the latter part of the section relating to villages having an odd number of trustees. No village incorporated under the general law has an odd number of trustees. So it is clear the act was intended to apply at least to villages organized under special charters. In 1907 (by ch. 398 of the laws thereof) the legislature amended sec. 875, Stats. (1898), by adding thereto the words: "and a supervisor, except in counties having a population of at least 250,000." The section was rewritten with these words

added. As rewritten it provided: "At the annual charter election in each village there shall be chosen the following officers, viz.: A president, six trustees, a clerk," etc., thus clearly evincing the idea that the legislature did not consider sec. 875, Stats. (1898), as having been in any wise amended or repealed by ch. 329, Laws of 1901. Again, in 1909 the legislature, by ch. 260 of the laws thereof, amended sec. 878 of the Statutes by omitting therefrom the words "except in the office of president, which shall be filled by a special election." This section provides: "The term of office of all village officers, except justice of the peace and police justice, shall be one year and until their respective successors are elected or appointed and qualified." By the amendment of this section in dropping therefrom the words quoted, it is evident the legislature regarded that the section and all parts of it, including that which provided for a one-year term of office for trustees, was still in force. In 1911, by ch. 11 of the laws thereof, the legislature specifically amended secs. 875 and 878 of the Statutes and created sec. 875m, which latter section provides:

"Villages shall have a president and six trustees unless its charter shall otherwise provide and shall elect them as follows: The president shall be elected annually. On the first Tuesday in April following the taking effect of this act, one half of the trustees shall be elected for a term of one year and one half of the trustees shall be elected for a term of two years and each year thereafter one half of the trustees shall be elected for a term of two years."

Thus it will be seen that in 1911, by a specific amendment of secs. 875 and 878 and the creation of sec. 875m of the Statutes, substantially the same provisions were embodied in the general charter law that were in 1901 by ch. 329 of the laws thereof embodied in the charters of villages incorporated under special acts. It seems clear, therefore, that the legislature never considered that ch. 329, Laws of 1901, at any

time applied to villages incorporated under ch. 40 of the Statutes. The result indicated is not only in harmony with the legislative construction, but it is in harmony with the evident intent, purpose, and language of ch. 329, Laws of 1901, and renders subsequent legislation consistent and harmonious. Were relators' view to be adopted, we would have to assume that the legislature in 1907 and 1909 intended to amend portions of sections of the general charter law that had previously been repealed, and that in 1901 they specifically embodied in the general charter act provisions that had previously been incorporated therein by the law of 1901. The lawmakers should not be deemed to have intended such anomalous results unless no other reasonable construction can prevail. *Hite v. Keene,* 137 Wis. 625, 119 N. W. 303. It is also a cardinal principle of statutory construction that conflicts, by implication or otherwise, between different statutes are not favored and will not be held to exist if they may otherwise be reasonably construed. *Att'y Gen. ex rel. Taylor v. Brown,* 1 Wis. 513; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425; *Mason v. Ashland,* 98 Wis. 540, 74 N. W. 357.

We have reached the conclusion that the trial court correctly held that ch. 329 of the Laws of 1901 applied only to villages incorporated under special charters and had no application to the village of Kilbourn. That being so, it follows that during all the time in question the village of Kilbourn should have annually elected six trustees. It also follows that at the election of 1911 six trustees were to be elected. It is true that at such election the trustees were not divided into two classes as provided for by ch. 11, Laws of 1911. The failure to do so, however, was a mere irregularity and did not invalidate the election itself. Ch. 11 provided for the election of six trustees, none of whom were to serve for less than one year. Therefore all who were elected in 1911 would be entitled to hold the office for at least one year from

the date of their election. It was to test their right to hold office during such year that the present action was instituted. Hence it follows that the trial court properly entered judgment declaring the defendants to be the duly elected, qualified, and acting trustees for such year, and that the relators had no right, title, or claim to the offices.

The result reached renders it unnecessary to consider or determine the validity of ch. 168 of the Laws of 1911, and we express no opinion as to its constitutionality.

*By the Court.*—Judgment affirmed.