MALONEY, Appellant, vs. INDUSTRIAL COMMISSION, Respondent.*

*December 10, 1942—January 12, 1943.*

* Motion for rehearing denied, without costs, on May 18, 1943.

The cause was submitted for the appellant on the brief of *Elmer R. Honkamp* and *William F. Hegner,* attorneys, and *Bradford & Derber* of counsel, all of Appleton, and for the respondent on the brief of *Stanley Rector* and *Arthur Barber,* both of Madison.

A brief *amicus curiæ* was filed by *Roberts, Roe & Boardman* of Madison.

On the motion for rehearing, in addition to the briefs filed by the attorneys for the litigants, a brief *amicus curiæ* was filed by *Lines, Spooner & Quarles* and *Charles B. Quarles,* all of Milwaukee.

Fowler, J.   This is an appeal from a judgment of the circuit court for Dane county affirming an order of the Industrial Commission assessing unemployment contributions of $376.32 against the plaintiff, on the ground that the members of several bands or orchestras that furnished the music for dances conducted in two dance halls operated by him between January 1, 1939, and June 1, 1941, were his employees under the terms of the Unemployment Compensation Act, ch. 108, Stats.

The assessment of the contributions is based wholly on the gross amount paid by the plaintiff proprietor for the services of several orchestras or bands that furnished music for the dances.   There is no contest over the gross amount paid for the music or the computation.   The only ultimate question is as to the liability of the plaintiff to contribute to the fund the act provides shall be created by employers subject to the act for payment of unemployment benefits to their employees.

The facts are not in dispute.   Before giving a dance the plaintiff arranged with the leader of some one of several orchestras to furnish the music for it at a specified date, specified the number of musicians to be furnished, and agreed on a lump-sum payment to be made to the leader.   He had no contact with any other musician.   The lump sum included compensation of the musicians and expenses.   The plaintiff did not fix the compensation of the individual musicians, and did not know how much was for expenses and how much for wages, and did not know how much was for the musicians other than the leader nor how much was for the leader.   A form of contract furnished by the union to which the musicians belonged was signed by the plaintiff and the leader which recited that the musicians were employees of the plaintiff.   The plaintiff had nothing to say about who the musicians should be.   He could not select or discharge them, and had no control whatever over them.   The leader arranged the dance program, supplied and selected the music played and the music racks. In some cases the musicians and the leader constituted a group

of joint adventurers, and the sum paid would be distributed according to the agreement as to expenses and compensation existing between the leader and the rest of the group. Ordinarily the compensation of the individual members was the minimum union wage, and the members of the group other than the leader paid the leader a cent a mile for transporting them in his own conveyance to and from the dance hall where the dance was held, when it was held outside of the district wherein the union to which they belonged was located. Each orchestra went by a specified and generally known name, and in case of more than one engagement by the same orchestra, the number in the group and its membership might be different at the different engagements. In many cases the leader received more than the aggregate union wage, in which case he paid the other individual members the union wage or the amount agreed upon and kept for his own compensation what was left of the lump sum after making these payments. Eighty or ninety per cent of the musicians had steady day employment with persons other than the plaintiff.

The briefs of the plaintiff and *amici curiæ* are devoted principally to the question whether the status of the plaintiff as employer of the individual members of the orchestras, other than the leaders, is to be determined by the common-law rules applied under the law of master and servant to determine whether the leaders of the orchestras were employees of the plaintiff or independent contractors.

Two cases determining status under the act have been decided by this court, *Wisconsin B. & I. Co. v. Industrial Comm.* 233 Wis. 467, 290 N. W. 199, and *Moorman Mfg. Co. v. Industrial Comm.* 241 Wis. 200, 5 N. W. (2d) 743. The plaintiff contends that the instant case is ruled by the former. The defendant contends not, because in the *Moorman Case* we held that an applicant for unemployment compensation may be an employee of the person for whom service is rendered although upon common-law principles his relation to that person may be that of an independent contractor. We

held in the *Wisconsin B. & I. Co. Case* that the definitions contained in the act applied to fix the status of an applicant for compensation, but did not apply to make a subcontractor, who hired an applicant to work for him in performing his subcontract, the agent of his principal contractor, and thus constitute the applicant an employee of the principal contractor. We pointed out in the *Moorman Case* that we decided in the *Wisconsin B. & I. Co. Case* that Drews who hired the applicants for unemployment compensation, was a subcontractor of a principal contractor, and therefore an independent contractor and not an agent or employee of the principal contractor, and that the applicants were his employees and not employees of the principal contractor. In the *Wisconsin B. & I. Co. Case* the primary question was whether the bridge company was the person liable to the applicants for unemployment compensation or Drews who hired the applicants as an independent contractor. Here no applicant for unemployment compensation is directly involved, but the underlying question involved is the same as in the *Wisconsin B. & I. Co. Case*—whether the plaintiff or the leader of the orchestra is the one liable to contribute to the fund provided for unemployment compensation if any liability for such contribution exists. We consider that under the undisputed facts stated and the rule of the *Wisconsin B. & I. Co. Case,* the individual musicians other than the leader were the employees of their leader rather than of the plaintiff, except in the case of the groups constituting joint adventurers, referred to by the appeal board as partnerships, in which case the employment was of the group as a whole. In neither case were the individual musicians employees of the plaintiff under the Unemployment Compensation Act. The case of the group is analogous, if not identical, with that of the partners in *York v. Industrial Comm.* 223 Wis. 140, 269 N. W. 726, under the Workmen's Compensation Act. The status of the parties is fixed by the facts, not by the mere recitation in the written contracts that the musicians are employees of the plaintiff.

The contracts no more fixed the status of the musicians as employees of the plaintiff than did the "work orders" involved in the *Wisconsin B. & I. Co. Case.*

That the musicians were not employees of the plaintiff under the Unemployment Compensation Act also appears from consideration of the act and of the stated grounds on which the appeal board and the Industrial Commission based their ruling.

The board based its conclusion that the plaintiff is liable for contributions solely upon sub. (3m) of sec. 108.02 of the act, and its findings under that subsection. The subsection reads:

"Any individual performing services for pay shall be presumed to be 'employed,' unless and until the employer has satisfied the commission that [1] such individual has been and will continue to be free from the employer's control or direction over the performance of his services both under his contract and in fact, and that [2] such services have been either outside the usual course of the employer's enterprise or performed outside of all the employer's places of business, and that [3] such services have been performed in an independently established trade, business, profession or occupation in which the individual is customarily engaged."

The board concluded that as it was not satisfied that the first two of the matters stated were not shown to exist it must presume by force of the statute that, as the musicians performed services for the plaintiff, the plaintiff was their employer under the language of sub. (3m) and liable for unemployment compensation.

The board treated the presumption stated in the statute as conclusive of the whole question. But the presumption is not conclusive. Like other presumptions it must yield to facts proved that establish the contrary. To construe the presumption otherwise would deny due process and equal protection of the laws and render the subsection unconstitutional. *Schlesinger v. Wisconsin,* 270 U. S. 230, 240, 46 Sup. Ct.

260, 70 L. Ed. 557. Provisions in statutes must not be so construed as to render them unconstitutional if a construction can reasonably be given that will avoid this result. To be an employer under the act one must necessarily have employees who are entitled to benefits under it, else the imposition of contributions is purely arbitrary. This is indicated in the *Moorman Case, supra,* p. 206, where it is said:

"An employee to be entitled to compensation must, of course, as above indicated, fall within the terms of the act."

The instant musicians are not employees under the act unless they meet the conditions specified in the act as essential to entitle them to benefits under it. The evidence shows without dispute that the musicians who furnished music for the dances furnished it only for a single dance, or at most for only two or perhaps three dances during the entire period, and in each case the contract was for a single night. The statutes of 1939 were in force when the services were performed and govern the rights of the parties, and the citations herein are to those statutes. Sec. 108.04, Stats., prescribes what is essential to constitute an employee eligible for benefits. The evidence shows that not a single musician who played for the dances given by plaintiff met a single one of the conditions specified by statute as necessary to make him eligible to compensation. The perusal of the various subsections and paragraphs of the act shows that the act was not intended to apply to one who performed service on a single day or on two or three disconnected single days at long intervals. It contemplates and covers only those who were under a continuing contract of employment or to be employed through successive weeks.

Sec. 108.05 (1), Stats., shows that the musicians rendering service at the dances could never by any possibility ever be entitled to any benefits from plaintiff's account if he had one:

"Each eligible employee shall be paid benefits from the employer's account for each week of his total unemployment, at a weekly benefit rate determined by taking one half of the

employee's average weekly wage from the given employer and by adjusting the resulting amount to a multiple of one and one-half dollars in the following cases: . . ."

Sec. 108.02 (7), Stats., provides that an employee's "average weekly wage" shall be determined by taking the employee's total wages received from the employer during a calendar year and dividing it by the number of weeks during which the employee performed service for the employer. How could one of the musicians have an "average weekly wage" from the plaintiff when none of them ever played on more than one day or on more than one day at a time at long intervals? Why accumulate a fund to compensate employees for unemployment when the evidence shows that none of them can ever receive unemployment compensation? There is no evidence in the record that the plaintiff in conducting his dances ever employed anyone in connection with that business except the musicians, and the amount of the contributions assessed against the plaintiff is based entirely on the amounts paid to them.

An act must be construed according to its manifest intent, and that intent must be derived from the act as a whole, not from any single clause in it, unless that clause is so explicit as to exclude any other construction than such as is particularly and designedly declared or indicated by it. A mere omission to exclude from an act by particular designation everything conceivable not within its plain purpose and intent does not bring within the act a thing plainly not within its purpose and intent, even though other things may be particularly excluded. So construing the instant act it does not entitle the instant musicians to unemployment benefits from the plaintiff. Any other construction would make the act utterly and absolutely absurd. The circuit judge pointed out many absurdities resulting from the construction given to the act by the commission; as that if a local theater should engage the Minneapolis Symphony Orchestra for a single perform-

ance this would make the theater company liable to pay unemployment benefits to every member of the orchestra. He "wonders" "By what possible theory does a local theater become chargeable with unemployment contributions for every professional actor or passing troupe of actors?" We add to the trial judge's long list of absurd results that would follow from the commission's construction of the act—that if a local merchant subject to the act should some morning pay a meandering tramp a dime to sweep a single slight snow flurry off the sidewalk in front of his store to enable the tramp to buy "a cup of coffee" for which he begged, the tramp on finishing his job and receiving his dime would be entitled to unemployment benefits on going through the motions prescribed for a regular employee to secure such benefits who is discharged without fault on his part.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment vacating the assessment of contributions against the plaintiff.

BARLOW, J., took no part.

The following opinion was filed May 18, 1943:

FOWLER, J. (*on motion for rehearing*). There is a motion for rehearing. Briefs have been filed by the parties. A brief *amicus curiæ* is also filed. The complaint of these briefs mainly is in effect that the opinion holds that only the compensation of such employees as are eligible to unemployment compensation should be included in the basis for computation of the employer's contributions to the fund accumulated for paying such compensation. While there is no direct statement to that effect, we so intimated in stating in the original opinion, *ante,* p. 171, 7 N. W. (2d) 580, that the act "contemplates and covers only those who were under a continuing contract of employment or to be employed through successive weeks." That only such persons were at the time

involved entitled to unemployment compensation appears from sec. 108.04 (9) (a), Stats. 1939, but on reconsideration it does not appear to us to follow from this that the compensation paid to them was not to be included in the pay roll used as basis of the computation of the unemployment contributions of the employer.

We also conclude on reconsideration that the holding of the opinion that the musicians were not employees of the plaintiff is incorrect. This holding was made upon a false assumption. That assumption was that the decision in *Wisconsin Bridge & Iron Co. v. Industrial Comm.* 233 Wis. 467, 290 N. W. 199, rules the instant case because by that decision the musicians would be employees of the leaders of the orchestra of which they were a part. In the *Wisconsin Bridge & Iron Co. Case* we applied the common-law conception of the independent contractor and under that conception held that Drews was a subcontractor and therefore an independent contractor and the applicants for unemployment compensation were his employees and not employees of the *Wisconsin Bridge & Iron Company.*

But the instant case is governed by the statutes of 1939. Those statutes contain sub. (21) of sec. 108.02, not referred to in the briefs and not noticed by us which reads:

"*Undefined terms.* Any word or phrase used in this chapter not specifically defined herein shall be interpreted in accordance with the common and approved usage thereof and in accordance with other accepted rules of statutory construction. No legislative enactment shall control the meaning or interpretation of any such word or phrase, unless such enactment specifically refers to this chapter or is specifically referred to in this chapter."

This subsection was not in the 1937 statutes. By it we are prevented from considering, as we might under the 1937 statute, statutes then existing as controlling the meaning of the term "employer." The meaning of that term in the 1937 statute was controlled by the 1935 statutes because the 1937

statutes defined the term as a person who was such under the statutes of 1935, and under sec. 108.02 (d), Stats. 1935, an employer of a subcontractor who was himself subject to the act was not an employer of the employees of the subcontractor. By the last sentence of sub. (21) of sec. 108.02, *supra,* we are precluded from going back to the 1937 or 1935 statutes to determine whether the plaintiff was the employer of the musicians. Considering only the definitions of the 1939 statutes, we are of opinion that the plaintiff was an employer of the musicians under the definitions of those statutes as well as that the compensation of persons not entitled to unemployment compensation should be included in computing the employer's unemployment contributions. The controlling statutory provisions besides said sub. (21) are as follows:

Sec. 108.02 (3) : " 'Employee' means any individual who is or has been employed by an 'employer' and in an 'employment' both subject to this chapter."

Sec. 108.02 (3m) : See the original opinion, *ante,* p. 170, 7 N. W. (2d) 580.

By sec. 108.02 (4) (a), (b) an employer is a person who was subject to the act under the statutes of 1937 or any other person who employed eight or more persons for eighteen weeks in 1937.

By sec. 108.02 (6) "Wages" means "every form of remuneration payable . . . to an individual for personal services. . . ."

By sec. 108.18 (1) employers shall contribute a specified percentage of their "pay roll."

By sec. 108.02 (8) "pay roll" includes "all wages payable for a given period . . . to the . . . employees for their 'employment.' . . ."

Taking sub. (3m), *supra,* as it reads, and we finally conclude that we must, under the other provisions above noted the judgment of the circuit court must be affirmed.

As the briefs filed on the motion for rehearing cover everything that could be presented on reargument, reargument would serve no useful purpose. The motion for rehearing is therefore denied, but the mandate filed will be vacated and another substituted.

The brief *amicus curiæ* filed on the original hearing sufficiently covered the issues on the appeal. It comprised twenty pages and was long enough. The costs to the respondent on the appeal for printing the brief will therefore be limited to that number of pages. No costs will be allowed on the motion for rehearing.

*By the Court.*—The original mandate is vacated. The judgment of the circuit court is affirmed. No costs are allowed on the motion for rehearing. The costs of the appeal taxed for printing of the brief allowed the respondent will be limited to twenty pages.