SMITH, Administrator, and others, Respondents, vs. CITY
OF BROOKFIELD, APPELLANT.*

*December 7, 1955—February 7, 1956.*

* Motion for rehearing denied, with $25 costs, on April 3, 1956.

For the appellant there were briefs by *Richard W. Cutler,* *T. L. Tolan, Jr.,* and *Wood, Warner, Tyrrell & Bruce,* all of Milwaukee, and oral argument by *Mr. Cutler.*

For the respondents there was a brief by *Love, Davis & McGraw* of Waukesha, and oral argument by *Robert T. McGraw.*

A brief was filed by *Lowry & Hunter* of Waukesha, as *amicus curiae.*

MARTIN, J. The zoning ordinance involved, originally adopted by the town of Brookfield and later adopted by the city of Brookfield when the area involved in this litigation was incorporated within the city in 1954, provides in part:

"Whereas, the town board of supervisors of the town of Brookfield deem it necessary in order to provide adequate light, pure air, and safety from fire and other dangers, to conserve the taxable value of land and buildings throughout the township, to avoid congestion in the public streets and highways and to promote the public health, safety, comfort, morals, and welfare, *all in accordance with a comprehensive zoning plan;* now, therefore,

"Be it ordained by the town board of supervisors of the town of Brookfield, Waukesha county, Wisconsin.

"Zoning

"Section 7. Agricultural District.

"(a) Use regulations. . . . In agricultural districts no buildings or lands shall be used and no building shall be hereafter erected or altered except for one or more of the following uses: . . .

"4. For uses enumerated below, providing the location and plan of operation have been submitted to and approved by the board of appeals after recommendation of the planning commission and after public hearings in the matter: Cemeteries and mausoleums for the burial of human remains only, quarries, sand and gravel pits, riding academies, golf courses, airports, nurseries, greenhouses, camps, and other similar

semipublic uses, as well as uses enumerated in section 60.09 under Public Buildings."

In August of 1953, after the adoption of this ordinance, respondents began operating a commercial sand and gravel pit in an area zoned as agricultural, without first applying for a permit under the ordinance.

The primary question raised on the appeal is whether sec. 7 (a) 4 of said ordinance is unconstitutional on the ground that it establishes insufficient guides with which to judge an application for a permit to conduct a gravel-pit operation in an agricultural district in the city of Brookfield.

The trial court held:

"There are no rules or regulations in the ordinance defining the extent or limitations of the use so as to protect the lawful rights of the user, and, therefore, the granting of the petition is left to the discretion of the board of appeals after a public hearing. As a result the board of appeals can be swerved by outside influences not germane to the issue and to the damage of the user, and, therefore, section 7, subsection 4 of the said ordinance is unconstitutional."

That courts will presume in favor of the constitutionality of a statute is so elementary as to require no citation of authority.

As to ordinances:

"A zoning ordinance is presumed to be valid, and he who asserts its invalidity 'must establish his claim,' *La Crosse v. Elbertson* [205 Wis. 207, 237 N. W. 99]; 'must make the fact of its invalidity clearly appear,' *State ex rel. Newman v. Pagels,* 212 Wis. 475, 479, 250 N. W. 430. . . ." *Geisenfeld v. Shorewood* (1939), 232 Wis. 410, 416, 287 N. W. 683.

Sec. 7 (a) 4 of the ordinance requires that before certain enumerated uses (including sand and gravel pits) may be made of the property the "location and plan of operation" shall be submitted to the board of appeals for approval.

Respondents contend this requirement means nothing, provides no standards or guides for the board in the issuance or denial of permits for such use. It is apparent, however, from a reading of the preamble setting forth the purposes of the ordinance—to conserve taxable values of land, avoid congestion in the streets, promote public health, safety, etc.,—that the facts submitted to the board in the "location and plan of operation" are to be considered from the standpoint of whether or not they are consistent with those declared purposes. Moreover, sec. 16 of the ordinance provides that it shall be interpreted and applied as establishing the minimum requirements for the protection of public health, safety, and welfare.

Respondents contend that reference may not be had to the preamble as an aid in construing sec. 7 (a) 4. It is true that the preamble of a statute cannot enlarge its scope and operation, *Pulis v. Dearing* (1858), 7 Wis. *221, but it may be considered in determining the intent of the act.

As stated in 6 McQuillin, Mun. Corp. (3d ed.), p. 141, sec. 20.59:

"Notwithstanding the English rule that the title cannot be resorted to in construing an enactment, it has been recognized from an early date in this country that the title and preamble of an ordinance or statute may be considered in construing it."

In construing a statute or ordinance its intent must be derived from the act as a whole. *Maloney v. Industrial Comm.* (1943), 242 Wis. 165, 7 N. W. (2d) 580, 9 N. W. (2d) 623.

Again, in McQuillin, *supra,* page 132, sec. 20.54, it is stated:

"An ordinance must be construed as an entirety, and the legislative intention that is contained within it must be determined accordingly, and not from a part thereof. As sometimes stated: 'Legislative intent must be gathered from the

four corners of the ordinance, and, if lawful, given effect by the courts.' 'It is an established rule in the exposition of statutes that the intention of the lawgiver is to be deduced from a view of the whole and every part of a statute, taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of terms.' Hence, provisions of an ordinance are to be read and construed in the light of the whole ordinance, to the end of resolving, if possible, any doubt or conflict in meaning."

Respondents would have us interpret sec. 7 (a) 4 without any thought of the purposes this ordinance is intended to accomplish, as set out in the preamble and sec. 16. This view we cannot adopt. Every authority on the subject holds that the preamble can and should be used as an aid in the construction of a statute or ordinance.

In *Nazro v. Merchants' Mut. Ins. Co.* (1861), 14 Wis. *295, *298, this court held:

"Legislative enactments are not to be defeated on account of mistakes, errors, or omissions, any more than other writings, provided the intention of the legislature can be collected from the whole statute. If the mistake renders the intention doubtful, we may look to the title and preamble, as well as the body or purview of the act, for assistance in arriving at it; and not until all these fail can the act be held inoperative."

Again, in *Bloch v. American Ins. Co.* (1907), 132 Wis. 150, 164, 112 N. W. 45, this court stated:

"The title and preamble of the act may be considered if the meaning of the act is doubtful (*Nazro v. Merchants' Mut. Ins. Co.* 14 Wis. *295; *Mundt v. S. & F. R. Co.* 31 Wis. 451), at least for the purpose of discovering the scope and purpose of the statute from the mischiefs which are to be remedied and the objects to be accomplished by its provisions. *Pulis v. Dearing,* 7 Wis. *221.*"

May the preamble be resorted to in a situation, as in the instant case, to provide limits and guides to the discretion

to be exercised by the zoning board of appeals? In other words, where there is no patent ambiguity in the enacting clause of an ordinance, may the preamble be resorted to in order to save the constitutionality of the ordinance? We concede that to do so gives greater effect to the preamble than this court has previously done in any of our prior decisions. However, we consider such result to be in accord with the better-reasoned authorities on the subject.

2 Sutherland, Statutory Construction (3d ed.), p. 349, sec. 4804, states:

"More accurate interpretations will be achieved if the preamble is considered the same as the enacted part of the law and the 'whole act' manner of interpretation is followed."

Further, the same author, at page 352, sec. 4808, of the same volume, states:

"Although the preamble has been in disuse for many years there is a modern tendency to use it or a policy section to explain the basis for legislative action on the theory that it will assist in the establishment of the constitutionality of the act. The preamble is useful in constitutional litigation where it is alleged that the act, (1) conflicts with specific constitutional prohibitions, and (2) *where the act is alleged to be unreasonable and arbitrary.*" (Emphasis supplied.)

In a note entitled "Legal Effect of Preambles—Statutes," in 41 Cornell Law Quarterly, 134, 137, the author states:

"But where the enacting clause is sufficiently broad, the preamble may be employed by the court to restrict its meaning and application, especially in a case where it otherwise might be held unconstitutional."

Applying these principles to the ordinance before us for construction, we conclude that while the preamble may not be used to enlarge the scope of the ordinance, resort may properly be had thereto to the purposes stated therein in

order to provide guides for the exercise of the board's consideration of the "location and plan of operation" in exercising the discretion vested in it by sec. 7 (a) 4. If the board should abuse such discretion in the light of such guides, a court on review would be in a position to grant full relief to an aggrieved property owner.

It must be kept in mind what the words "location and plan of operation" imply in this ordinance. In determining whether or not the effect of a particular gravel-pit operation on the taxable values of property in the city and upon the health, safety, comfort, and welfare of the public will be detrimental, it is necessary for the board to know, for instance, the distance of the pitsite from the roads and the surrounding residential property, ingress and egress locations, necessary equipment for removal of the gravel, the proposed depth of the pit and whether it will be leveled when operations cease, the hours of the day it is intended to be operated, the number of laborers and trucks to be employed, the routes the trucks will take, whether blasting will be done, and the like. These and similar facts will be detailed in the "location and plan of operation" submitted to the board. The phrase itself is very broad, and necessarily so, since the facts in one application may vary greatly from the facts in another, and obviously it would be impossible for the framers of the ordinance to anticipate all the possible details which might be involved in the different uses enumerated therein. In exercising its discretion under this ordinance, the board is obliged to take into consideration every factor in the plan of operation which would have any bearing on the purposes for which the ordinance was enacted. In order to approve an application, the board must determine that the particular proposed plan will not conflict with those purposes.

In the recent case of *State ex rel. Saveland P. H. Corp. v. Wieland* (1955), 269 Wis. 262, 265, 69 N. W. (2d) 217, the ordinance of the village of Fox Point required that be-

fore a building permit should issue, the building board must find that the " 'exterior architectural appeal and functional plan of the proposed structure will, when erected, not be so at variance with either the exterior architectural appeal and functional plan of the structures already constructed or in the course of construction in the immediate neighborhood or the character of the applicable district . . . as to cause a substantial depreciation in the property values of said neighborhood within said applicable district.' " It was contended, among other things, that the standards set in the Fox Point ordinance were so indefinite as to subject applicants to the arbitrary discretion of the board, but this court said (p. 274) :

"Just because some discretion is necessarily accorded the board to determine the limits of a neighborhood, as applied to a particular applicant's property, does not render the ordinance void. *Milwaukee v. Ruplinger* (1914), 155 Wis. 391, 395, 145 N. W. 42; and *Pinkerton v. Buech* (1921), 173 Wis. 433, 181 N. W. 125. In the first mentioned of said two cases, this court upheld an ordinance of the plaintiff city which prohibited anyone from carrying on a junk shop in the city without a license, and further provided 'all applications for license under this ordinance shall be made to the mayor, who may grant or refuse to grant such license as to him may seem best for the good order of the city.' The court held the ordinance granting to the mayor the power to grant or refuse licenses *'as to him may seem best for the good order of the city'* set a sufficiently definite standard, and held the ordinance constitutional. In the *Pinkerton Case* the constitutionality of a statute providing for the licensing of private detectives was upheld which required the approval of the application by the fire and police commission of the city and a finding by the secretary of state that the applicant was *'of good character, competency, and integrity.' "*

Respondents apparently concede that had the general statement of purposes set out in the preamble appeared in the body of sec. 7 (a) 4 together with the board's required approval of the "location and plan of operation," there would

be sufficient norms and guides therein to sustain its validity. Counsel cites many cases, including *La Crosse Rendering Works v. La Crosse* (1939), 231 Wis. 438, 285 N. W. 393 (rendering plants); *Juneau v. Badger Co-operative Oil Co.* (1938), 227 Wis. 620, 279 N. W. 666 (bulk oil storage and filling stations); *Lerner v. Delavan* (1930), 203 Wis. 32, 233 N. W. 608 (junk yards); *Pinkerton v. Buech* (1921), 173 Wis. 433, 181 N. W. 125 (private detectives); and *Milwaukee v. Ruplinger* (1914), 155 Wis. 391, 145 N. W. 42 (junk shop), where the objectives were set out in the body of the ordinances in question. It will be noted that the ordinance under scrutiny in each case dealt with a single use. This is also true of *State ex rel. Saveland P. H. Corp. v. Wieland, supra* (architecture), and *Caledonia v. Racine Limestone Co.* (1954), 266 Wis. 475, 63 N. W. (2d) 697 (quarries), (though decided on another ground). Obviously, where that is true, it is only natural for the council to specify the particular objective against which the particular use is to be weighed. Here, however, the ordinance is "a comprehensive zoning plan" and deals with a number of uses—"Cemeteries and mausoleums . . . quarries, sand and gravel pits, riding academies, golf courses, airports, nurseries, greenhouses, camps, and other similar semipublic uses, as well as uses enumerated in section 60.09 under Public Buildings." To attempt to specify the particular objective against which each of the enumerated uses must be measured would render the ordinance unduly long and cumbersome. Having declared the various purposes which the entire zoning ordinance was intended to accomplish, the council could expect the board to apply in each particular case the particular objective applicable thereto. Certainly it could properly assume that the board would not ignore its declaration of purposes but would effectuate them in the discharge of its duties under sec. 7 (a) 4.

Some argument is also made that the ordinance is invalid as requiring a plebiscite of the neighborhood, citing *State ex rel. Nehrbass v. Harper* (1916), 162 Wis. 589, 156 N. W. 941, and *Wasilewski v. Biedrzycki* (1923), 180 Wis. 633, 192 N. W. 989, in which ordinances were held invalid which gave neighboring property owners the power to decide whether a particular property owner should be permitted to use his property in a certain way. The ordinance before us merely provides for a public hearing in order to give interested parties an opportunity to express their opinions on the matter, but there is nothing in the ordinance which makes such opinions binding on the board. The trial court apparently felt that the provision for a public hearing made it possible for the board to be "swerved by outside influences not germane to the issue," but, on the contrary, the presumption must be that the board will do its duty and decide the issues on the basis of the facts presented as they may affect the purposes for which the ordinance was enacted.

It is also urged by respondents that the ordinance creates an improper classification in that it requires a permit for the removal of rock, sand, and gravel from lands in an agricultural district but does not require a permit for the removal of materials such as topsoil and peat moss from such lands. The mere fact that all such materials are taken from the soil does not make the uses identical; and respondents fail to show facts regarding the operations involved in the removal of peat moss and topsoil which would have required their inclusion in the ordinance to arrive at a proper classification.

As to the question of nonconforming use, respondents seek no review of an adverse finding by the trial court, but our review of the record convinces us that such finding is amply supported by the evidence.

Since we have answered the question of the constitutionality of the ordinance on its merits, we do not find it neces-

sary to consider the question of exhaustion of administrative remedies. The pleadings show that an application was presented to the board by the respondents but action thereon was postponed by the board until the constitutionality of the ordinance was determined.

Neither is it necessary to decide the question whether respondents are estopped from contesting the validity of the ordinance by their attempt to secure a permit under it. In connection with their presentation on this point, appellants cite *Schutt v. Kenosha* (1950), 258 Wis. 83, 44 N. W. (2d) 902, and other cases, and we merely call counsel's attention to the fact that sec. 269.56 (2), Stats., relating to declaratory judgments, was amended by ch. 20, Laws of 1951, by the addition of the following language:

"No party shall be denied the right to have declared the validity of any statute or municipal ordinance by virtue of the fact that he holds a license or permit under such statutes or ordinances."

In view of the fact that our decision on the constitutionality of the ordinance makes it unnecessary to deal with the two last-mentioned questions, we are setting aside the order sustaining the demurrer to the supplemental answer.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint. The order appealed from is vacated and set aside.

BROADFOOT, J. (*dissenting*). I am unable to agree with the majority opinion herein. The sole question before the court is the validity of a single severable section (sec. 7) of a comprehensive zoning and building ordinance. This section does not refer to the city proper but is confined to the agricultural district. It might be termed the "catchall" section. It provides that no cemeteries, mausoleums, quarries, sand and gravel pits, riding academies, golf courses, airports, nurseries, greenhouses, and camps shall be operated therein

without a permit issued by the board of appeals. The trial court found that the section contained no standards or rules for the guidance of the administrative board. If the trial court is affirmed it would result in holding that single section to be invalid.

The majority opinion recognizes that there is a deficiency of standards in the section and has searched for a way to supply the same. They first go to a quotation from *Nazro v. Merchants' Mut. Ins. Co.* 14 Wis. *295, as authority for supplying the necessary standards. Apparently the majority of the court have been misled by the word "omissions" appearing in that quotation. Members of this court, even in that early day, sometimes make an ill-advised statement and one that is not necessary for the determination of the case under consideration. No precedent was cited for the use of that particular word. There was no omission in the statute being considered, as a reading of the case will disclose. There was a clerical error which made the statute indefinite and resort was had to the title thereof, which was required under sec. 18, art. IV, Const., to correct the clerical mistake. That case has never been cited as authority for the supplying of an omission in a statute or ordinance. *McCaul v. Thayer,* 70 Wis. 138, 149, 35 N. W. 353; *Bloch v. American Ins. Co.* 132 Wis. 150, 164, 112 N. W. 45; *McDermott v. State,* 143 Wis. 18, 44, 126 N. W. 888; *State ex rel. McManman v. Thomas,* 150 Wis. 190, 194, 136 N. W. 623.

The rule in this state has always been that the preamble to an ordinance, being a prefatory statement of the purpose and intent of the legislative body in adopting the ordinance, may be used to construe an ordinance where its meaning is doubtful. It is not claimed that there is anything doubtful or indefinite in the wording of the single section of the ordinance under consideration. Realizing that the *Nazro Case* is very doubtful authority for reading into an ordinance something that is not there, the majority have reversed a rule that has

been in force in Wisconsin for a century and are adopting a minority rule that is followed in only a very few jurisdictions. The Wisconsin rule is the most logical, and I consider it unwise to cast it aside for the purpose of sustaining an unimportant section in a city ordinance. I am further convinced that moving the preamble into sec. 7 of the ordinance does not cure the defect. The preamble contains statements of the purposes hoped for in the adoption of the ordinance, but those statements of purpose are not standards and rules for the guidance of the board.

I am authorized to state that Mr. Chief Justice FAIRCHILD and Mr. Justice GEHL join in this dissent.